No. 21.—GEORGE M. LOGAN and others, plaintiffs in error, *vs.* JOSEPH BOND, defendant.

[1.] At Common Law, where a bill is filed to engraft a parol trust upon a deed, and it does not appear upon its face, that the agreement sought to be enforced was *verbal* only, the defendant can neither demur nor move to dismiss the bill on that account, but if he wishes to avail himself of the objection, he must bring it before the Court, by the pleadings on his part. *Aliter*, in this State, where the cause of action is required to be "plainly, *fully* and distinctly set forth."

[2.] If a partner borrow money on his own security only, it does not become a partnership debt, although applied to partnership purposes.    The

presumption in such cases, that it is a part of the capital stock contributed by the individual partner.

[3.] All oral negotiations between parties to a written contract, which either preceded or accompanied the execution of the instrument, are to be regarded as merged in, or extinguished by it; and the writing is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves.

[4.] When there is a deed, it will admit of, no parol stipulation as a part of it; and whether the oral term adds to, varies or deducts from the written contract, it is inadmissible to introduce it upon parol evidence, unless the foundation is first laid for it, by alleging fraud, accident or mistake.

In Equity, in Bibb Superior Court.    Decision on demurrer, by Judge POWERS.    November Term, 1852.

Joseph Bond filed his bill against George M. Logan and others, alleging that in April, 1851, Logan having occasion to borrow money for the use of the firm of Logan & Atkinson, obtained from complainant his endorsement upon a note, of which the following is a copy:

"MACON, April, 1851.

On or before the 20th day of January next, I promise to pay to the order of Joseph Bond, five thousand dollars, for value received, payable at either of the banks in Macon.

Endorsed,                    GEORGE M. LOGAN.
JOSEPH BOND.

The bill further states that in March, 1852, the firm of Logan & Atkinson becoming embarrassed, proposed and actually did sell and convey to Asa Holt and others, their confidential creditors, their entire stock of goods, wares, and merchandise, and notes, books, accounts, &c. in full discharge of their indebtedness to said confidential creditors, amounting in the aggregate to $45,737 62.    That Logan refused to sign the bill of sale, until complainant was allowed by said creditors to participate, and that said parties thereupon agreed that complainant should come in, and his name was directed to be inserted in the bill of sale.    But afterwards, upon the suggestion of

VOL. XIII 25

counsel for said creditors, that the insertion of complainant's name might render void the conveyance—he appearing as an individual creditor of Logan upon the face of the note of $5,000 00—it was concluded to leave the name of complainant out of the bill of sale, but with the express agreement, that complainant should be allowed to participate rateably in the proceeds arising from the goods, wares, merchandise, &c. of the firm of Logan & Atkinson, and that without this agreement, Logan never would have signed the bill of sale.

The bill prayed that said confidential creditors be decreed to account for the proceeds of the assets transferred to them by Logan & Atkinson, and that each one contribute to complainant, so as to enable him to realize his *pro rata* share of said assets.

To this bill, a general demurrer was filed, with specifications, among which was the following: "That the bill seeks to engraft upon a written deed a parol agreement."

At the hearing, the Court overruled the demurrer, and ordered the defendants to answer, and this decision is brought up for review.

S. T. BAILEY, for plaintiff in error.

POE, NISBET & POE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The bill charges that Logan borrowed $5,000, and gave his individual note, which Bond endorsed; that the money borrowed went into the firm of Logan & Atkinson; that when that firm failed, they transferred by deed, to Holt and other creditors of the firm their assets, but that before Logan would consent to that transfer, the creditors promised (as he required) to let Bond share in the proceeds of the assets of the firm; that Bond's name was not put in the written transfer, because counsel advised that it would vitiate the transfer, his being an individual debt. That since the transfer, the credi-

tors to whom it was made, have disposed of said assets, and refused to pay Bond or let him share in the proceeds, according to their verbal agreement.

To this bill a demurrer is filed, and five objections are urged against the complainant's equity.

1st. Because he seeks to make the firm assets liable for Logan's individual debt.

2d. To engraft upon a deed in writing, a verbal promise, essentially adding to the deed.

3d. To violate the Statute of Frauds by making Holt and others liable to pay the debt of Logan upon a parol undertaking.

4th. To make Holt and others debtors to Bond, without Bond's having first fully discharged Logan, by extinguishing at the time of the alleged agreement Logan's debt to him.

5th. Because, if the complainant has any redress, it is *at Law*, by his own showing. He can sue Logan upon his note, which he has never surrendered up, and he can sue the firm for money paid to their use, and the creditors to whom the assets were transferred, for money had and received to his use.

[1.] Before examining any of these questions, I will notice a technical point which has been made, growing out of the pleadings. It is this. That as the bill does not allege that the agreement sought to be enforced, was by parol, it will be presumed to be in writing, until the contrary is made to appear from the proof; and that consequently the objection to the contract cannot be raised upon demurrer, but must be taken advantage of, by plea or answer.

We admit that such is the rule. For myself, however, I much doubt its good sense. The plaintiff in any Court, as well in Equity as at Law, should make out a case of legal liability. Suppose the bill or declaration charges the defendant with undertaking to pay the debt of a third person. All this may be true, and yet no recovery can be had, if the agreement was verbal. To make the party liable upon such a promise, it must be in writing, and ought to be so stated. Other-

wise there is not necessarily any issue of law between the plaintiff and defendant.

Besides, this practice violates another well established rule, namely, that the pleadings are to be construed always most strongly against the plaintiff. If the agreement was in fact in writing, the probability is, that he could have so charged it, in stating his case.

But whatever may be the established doctrine, our Statute requires that the cause of action should be plainly, *fully* and distinctly set forth. And if it be intended here to rely upon a written contract, the defendant should be notified thereof. Indeed, if the writing be the gist or foundation of the suit, it should be specially declared on; for the defendant is entitled to oyer of the paper, that he may deny it on oath if it be not his act and deed.

But the only legitimate construction that can be put upon the statements in the bill, as to the agreement is, that it was by *parol.* It was no new contract executed cotemporaneously with the original transfer of the assets, but simply a stipulation left out of the writing, because it was apprehended that its insertion might invalidate the instrument.

How stands this case, then, upon its merits?

[2.] It is apparent, that the main equity upon which this bill was supposed to rest, was that the $5,000 borrowed of Bond by Logan, went to the use of the firm of Logan & Atkinson. But this really constitutes no claim upon the partnership effects. For the principle is well settled, that if a partner borrow a sum of money, on his own security only, it does not become a partnership debt, although applied to partnership purposes. *Bevan vs. Lewis,* 1 *Sim.* 376. *Loyd vs. Frestefield,* 2 *Car. & Payne,* 325. *Smith vs. Crowen,* 1 *Cromp. & Jerv.* 500. *Jaques vs. Marynard,* 6 *Cowen,* 497. The presumption in such case is, that it is a part of the capital fund contributed by the individual partner, and if he is allowed a credit for it, as a part of the stock in trade, he gets credit for it twice. The fact that a separate security was taken by Bond, shows that he viewed it as a separate, and not

a firm debt. The bill does not charge even, that this $5,000 went in as stock in trade, or that goods were purchased with it for the concern.

- Seeing then, that Bond is not entitled to consider himself a creditor of the firm, it may well be doubted, whether a Court of Chancery would lend its aid in assisting him to enforce payment of his separate debt, out of the joint assets. Suppose Bond had taken the firm note, in discharge of his separate security, at the time the house of Logan & Atkinson failed, would it have been good against the partnership effects? Most clearly not. *Shineff vs. Wilks,* 1 *East.* 48. "This is an action," said Lord *Kenyon,* "brought against three persons, Wilks, Bishop and Robson, as acceptors of a bill of exchange. It appears that the acceptance was in fact made by Bishop alone, in the name of the firm, for a debt contracted by two of them only, and at a time when the third had no connection with the house. The plaintiff ought not to have taken this joint security. The transaction is fraudulent upon the face of it." And yet the creditor of Logan comes into Chancery and asks its interposition in his behalf to enforce just such a transaction.

[3.] But as the *second* objection to the bill, is decisive of its fate, we proceed at once to its consideration. And that is, that it proposes to engraft upon a deed, a parol stipulation, and thereby add an entire new term to the written contract.

It would be uncandid not to admit that respectable authorities may be found to support the complainant's case. 2 *Atkins' Ch. Rep.* 98, 256. 3 *Ib.* 388. 4 *Bro. Ch. Rep.* 578. 6 *Ves.* 325, *note.* 1 *Eq. Cas. Abr.* 20. 1 *Murphey's L. & E.* 141. 1 *Wash. Rep.* 14. In the North Carolina case, (*Gay vs. Hurt*) the Supreme Court say, "that whether parol evidence will be admitted to set up a trust, where a deed is absolute upon its face, depends upon the particular circumstances of each case, in which it is attempted."

[4.] We are satisfied, however, that the weight of opinion, as well as the policy of the law, is the other way, and that the effort to obtain a specific performance of this parol agreement

should not be allowed.    If this stipulation can be superadded, anything may be, and there would cease to be any faith repos- ed in written contracts.    The uniform decisions of this Court have been, that all oral negotiations between parties to a writ- ten contract, which either preceded or accompanied the exe- cution of the instrument, are to be regarded as merged in it, and that the writing is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves.    4 *Phil. Ev. Hill's notes*, 1467, 1468.    *Miller and others vs. Collins and others*, 5 *Geo Rep.* 341.    *Wynn Shannon & Co. vs. Cox*, 5 *Geo. Rep.* 373.

This last case was very similar to the present.    The defend- ant was indebted to the plaintiffs some fifteen hundred dollars. The father, to relieve the son, sold to the creditor three ne- groes at $1,000, and executed a bill of sale, purporting to be *payment in full* for the property.    Suit was instituted for the balance of the debt due by the son.    And the defence set up *and proven* was, that in addition to the purchase money paid the father, it was agreed that the residue of the son's debt left unsatisfied, was to be discharged in professional services, to be rendered by him to the plaintiffs, as an attorney at law. And the father, who was the principal witness on the trial, swore, and no one doubted his veracity, that " in considera- tion of this promise, he let the negroes go at $200 less than he otherwise would have taken for them."

This Court rejected the defence and the parol proof adduc- ed to support it, saying, " it is not pretended that the bill of sale, by omissions or insertions, does not speak the real inten- tion of the parties; that by fraud, accident or mistake, it was drawn differently from what it was designed to be ; it is not alleged that there is any ambiguity, either patent or latent, re- quiring explanation; there is nothing equivocal in the terms of the instrument, to make it necessary to resort to the circum- stances under which it was made, to ascertain its meaning. It is neither more nor less than a naked attempt to " *add to*" a written instrument, by parol evidence, a stipulation which it is insisted, was entered into at the time, but which the parties

did not see fit to have incorporated.  We are satisfied that this cannot be done without  infringing one of the soundest and most wholesome rules which Courts of Justice have devised for the security of  private property."

And in support of this proposition a great mass of authority is cited, and which goes  to establish not  only the general principle, that all *previous* negotiations vesting  in parol, but that those also which were had *at the time*, are merged in, and extinguished by the writing, and that admitting that the instrument does not contain the whole  contract, still show conclusively that oral proof is inadmissible to  supply the deficiency, unless it was occasioned by some  fraud practised  on the vendor, or by some mistake or surprise in reducing the  agreement to writing.

But perhaps the leading case of *Irnham vs. Child,* (1 *Bro. C. C.* 92,) is still more directly  applicable to this point.  It is cited with approbation by this Court, and on at length, both in *Miller and others vs. Collins and others,* (5 *Geo. Rep.* 341,) and in *Robson vs. Harwell and others,* (6 *Geo. Rep.* 589,) and has, I believe, always been received as sound law.

There the plaintiff had sold an annuity to raise money, with an express agreement that he might redeem ; but apprehending that if his right to redeem were put in writing, it might be held to be usurious, it was agreed to let that rest in parol. The defendant  refused to suffer the plaintiff to redeem,  and to compel a specific performance of this *verbal* stipulation, the bill was filed and dismissed.

The Chancellor says, " here a large annuity is sold for rather a small price, not the natural sum.  The agreement, they say, was that it should be  redeemable, but this does not meet my present idea.  To sell an  annuity and make it redeemable, is not *usury*, because it is not a *loan*.  It is a question whether to suppress this as  leading to usury, will  admit the party to come into a Court of Equity.  There is no case of the kind, of a mistake like this, where the doubt was whether the clause would be  evidence of usury.  It was agreed by

both parties, not to introduce the clause, but it was to stand on parol evidence."

" Such a bill can be sustained only on an allegation of fraud, mistake or surprise. But that the plaintiff's bill expressly negatives, by showing that it was intentionally left out of the deed, supposing its insertion would prove usury, while it did not."

" If so, they thought fit that the agreement should not be inserted in the instrument. If the insertion would make it usurious, no plaintiff could come here and state that as the reason of its not being inserted."

Analogous to this is the case also of *Potmore vs. Morris,* (2 *Bro. C. C.* 219,) likewise referred to favorably by this Court, in *Miller and others vs. Collins and others,* (5 *Geo. Rep.* 341,) where the Chancellor says : " Before the Statute of Frauds, parol evidence could not be admitted to contradict written agreements, except in very particular cases indeed. If fraud was imputed, it might be done, but it is dangerous to depart from the deed. It might be the intention that the annuity should be redeemable. But I can only get at it, by demolishing one of the foremost rules of law. Therefore I reject the evidence."

Now, in all these cases, to which I have referred, a full and valuable consideration passed from the plaintiff to the defendant, in the agreement sought to be enforced, according to the verbal understanding. Such however, is not the fact as it respects the case made by this bill. Logan & Atkinson being embarrassed, agree with certain confidential creditors, (Holt and others) named in the deed, of whom Bond is not one, to transfer to said creditors *in full satisfaction of their debts,* certain assets of the firm, and it is also agreed *by these parties* (not with Bond) that he, a creditor of Logan, should come into that contract. To exclude him, is not to put him in any worse condition than he occupied before. What loss will he sustain ? what right has he relinquished ? None. He does not even allege that he had been induced by reason of this

undertaking, to give up Logan's note and cancel the debt, as against him.

Testing this case, then, either by the Statute of Frauds or the Common Law, we deem it best to adhere rigidly to the rule, that where there is a deed in writing, it will admit of no contract that is not part of the deed, and that whether it adds to, varies or deducts from the contract, it is impossible to introduce it on parol proof, unless the foundation is first laid by alleging fraud, accident or mistake.

Judgment reversed.