Trippe, Judge.
1. By the common law, the owners of ships engaged in transportation were common carriers, and were liable as insurers against loss, without limitation as to the waters upon which the ships were navigated: 6 Howard, 334; Abbott on Shipping, 395. This rule of liability was altered in England by several Acts of Parliament, and its stringency greatly relaxed.
On the 3d of March, 1851, an Act of Congress was passed, entitled “An Act to limit the liability of ship owners, and for other purposes,” which provided that no owner of any ship or vessel shall be liable to answer for any loss or damage which may happen to any goods or merchandise which shall be shipped on board any such ship or vessel, by reason of any fire happening on board the same, unless such fire is caused by design or neglect of such owner. The seventh section provides that the Act “shall not apply to the owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation.”
The defendant was an association composed of several transportation ^'companies, including the Baltimore Steam Packet Company, who were owners of the steamer New Jersey, a first-class freight boat, and a sea-going vessel, engaged in the carryingtrade between Baltimore, Norfolk and Portsmouth. The suit was brought by plaintiffs for goods which were put on board said steamboat at Baltimore, for transportation through the Chesapeake Bay to Norfolk,.and thence to Tunnel Hill in this State. The vessel and the goods were destroyed by fire on the night of the same day it left Baltimore, and from the finding of the jury, the loss occurred without design or neglect of the owners. Defendants claim they are not liable, under the provisions of the Act of Congress above quoted. Plaintiffs insist that the case is within the exceptions of the seventh section of the Act and the common law rule of liability applies. In Watson vs. Marks, second volume, Law Register, 157, it was held in the United States District Court, Eastern District of Pennsylvania, that this Act applied to vessels employed in the coasting trade on the seaboard. The case of Moore et al. vs. American Transportation Company, 24 Howard’s Reports, 1, was an action against defendants as common carriers for hire, by canal boats and steam propellers from New York to Detroit, and was for goods which were not delivered on account of the burning on Lake Erie of the propeller in which the goods were shipped, the goods being put on board at Buffalo for transportation to Detroit. The defendants set up the same defense which is made in this case. Two points were urged in the argument — the character of the vessel employed, and that the navigation on Lake Erie was not inland. Upon the first, the Supreme Court of the United States say, “It is declared that the Act shall not apply to *410 the owner of any canal boat, barge or lighter, or to any vessel of any description used in rivers or inland navigation. It will be perceived that certain craft is excepted from the Act eo nomine and these a class of vessels without any designation other than by a reference to the waters or locality in which used. But the character of the craft enumerated may well serve to indicate to some extent, and with some reason, the *class of vessels in the mind of the law makers, which are designated by the place employed. This class may well be regarded ejusdem generis, and thus aid in interpreting the true meaning of the words of the Act, namely: vessels “used in rivers or inland navigation.” In reference to the navigation on Lake Erie and Lake Michigan, the Court say, “the policy and justice of the limitation of the liability of the owners, under this Act of 1851, are as applicable to this navigation as to that of the ocean,” and add, “the Act was designed to promote the building of ships and to encourage persons engaged in the business of navigation, and to place that of this country upon a footing with England and on the continent of Europe.”
The burning of the steamer Lexington on Long Island Sound, and the decisions made against the owners in the cases which grew out of said burning, let to the passage of this Act. Although the law upon this subject was well settled before these decisions, yet similar cases had been of such rare occurrence that ship owners did not seem, until they were made, to be fully aware of their liabilities.
In the arguments of counsel and in the decisions made, both in the Supreme Court of Michigan: 5 Michigan, 368; (1 Cooley,) the suit having been brought in the Courts of that State, and in the Supreme- Court of the United States,- in 24 Howard, ut supra, it seemed to be conceded or taken for granted that the navigation on Long Island Sound clearly came within the operation of the statute, and is not included in the exceptions of the 7th section. If so, then the navigation on Chesapeake Bay from the ports of one State to those of another State in “sea-going” vessels, stand on the same footing. In the case referred to, the Court further say, “the Act can apply to vessels only which' are engaged in foreign commerce, and commerce between the States. The purely internal commerce and navigation of a State are exclusively under State regulation.”
But it was argued that the Baltimore Steam Packet Company being associated with others who extended their business *as carriers into the interior of the country, would deprive them of the benefits of the Act. We do not think this affects the question. A feature in the case of Moore and the American Transportation Company was very similar to this fact in this case. ' The American Transportation Company was sued as a common carrier for hire, by canal boats and steam propeller from New York to Detroit. By the very terms of the seventh section, canal boats were excepted from the operation *411 of the Act, and yet that company made such craft special means in the business of the organization. Still, the loss of the goods having occurred on the waters of Lake Erie, by the destruction by fire of the steam propeller, the company was held entitled to the protection of the Act. The similarity between the two cases is evident.
'2. Plaintiff in error complains that because certain facts were proven suggestive of negligence on the part of defendant, the Court below erred in not charging more specifically with reference to the case as made by those facts. The general charge of the Court as to negligence was correct^ and to entitle the plaintiff to claim as error an omission to charge on a special point founded on any particular fact, he should have called the attention of the Court to it, and requested the charge. We, therefore, affirm the judgment of the Court below on all these points.
Judgment affirmed.