## HENDERSON, receiver, *v.* NATIONAL BANK OF TIFTON.

Three individuals who were officers in the Bank of S. applied to the Bank of T. for a loan on notes signed by them as individuals, payable to the Bank of T., with the request that the proceeds of the loan be placed to the credit of the Bank of S. The loan was made on these terms, and notes as above stated were taken, and the money representing the proceeds thereof was placed to the credit of the Bank of S. Subsequently the Bank of S. became insolvent, and its assets were administered through a receivership. The Bank of T. filed an intervention, claiming

that the Bank of S. was liable on the notes given to it by its officers as individuals. *Held,* that the Bank of S. was not liable under these circumstances, and it was erroneous to refuse to dismiss the intervention.

MAY 16, 1917.

Intervention. Before Judge Cox. Turner superior court. July 27, 1916.

The Bank of Sycamore became insolvent, and a receiver was appointed for the purpose of administering its assets for the benefit of its creditors in a court of equity. An order was passed allowing creditors to intervene. The National Bank of Tifton filed an intervention, to which a demurrer was interposed; and the bill of exceptions assigns error upon the judgment overruling the demurrer. The petition for intervention alleged facts as just indicated, and the following in substance: Prior to the closing of the Bank of Sycamore the petitioner was a correspondent, and it was customary for petitioner to discount negotiable papers for the Bank of Sycamore. The Bank of Sycamore also had an account in the bank of petitioner, upon which it was authorized to check or draw. Shortly before its closing the Bank of Sycamore sent to petitioner two promissory notes for stated amounts, which were signed individually by certain persons, one of whom was vice-president, another cashier, and the other a director of the Bank of Sycamore; and both notes were made payable to petitioner. When the notes were so sent the Bank of Sycamore "requested that the proceeds therefrom be placed to the credit of" the Bank of Sycamore, subject to check, as was the course of business theretofore followed between the two banks. At that time the cashier of the Bank of Sycamore explained to petitioner "that the money was being borrowed by and for the use of said Bank of Sycamore;" and that he, the cashier, and other makers, naming them, had signed the notes as individuals for the reason that they did not care to show upon their statement an increase of bills payable at that time. The amount of said notes, less discount, was duly placed to the credit of the Bank of Sycamore, and the proceeds thereof duly paid out in checks drawn by either the cashier or assistant cashier (naming them), for the use and benefit of the said Bank of Sycamore. Upon the failure of the Bank of Sycamore there was standing to its credit upon the books of petitioner a stated amount which petitioner "duly credited upon" one of the notes, leaving a stated balance due

on both notes, "besides interest thereon from the date of maturity of said notes." It was prayed that the petitioner have judgment for the amount of its debt, and that the judgment be paid from such funds as may come into the hands of the receiver.

*A. S. Bussey,* for plaintiff in error.

*Fulwood & Hargrett,* contra.

ATKINSON, J. It is contended in the brief of counsel for the defendant in error that the Bank of Sycamore procured the discount of the notes, and whether or not the cashier of that institution in procuring the discount acted as agent, or in so acting was without authority or acted fraudulently, the bank, having received the proceeds of the discounted notes, should be held liable. In support of such contentions a number of authorities are cited, dealing with cases in which equitable rights were asserted, growing out of transactions where an alleged agent acted for an undisclosed principal, and other transactions where there was fraud or want of authority of an agent, and ratification by the alleged principal, on account of the acceptance of the fruits of the transaction. The case under consideration is different from anything stated, and the principles of the cases mentioned do not apply. By the allegations of the petition, the suit is expressly upon the notes, to recover the amount of principal with interest thereon from the date of the maturity of the notes, less the amount of the credit entered upon one of the notes. If the claim had been for money had and received, it would have been upon the account with interest from the date on which the money was placed to the credit of the Bank of Sycamore. The cashier of the Bank of Sycamore did not pretend to act for an undisclosed principal, nor was it alleged that he deceived the National Bank of Tifton in any respect. On the contrary, it was alleged that he told the cashier of the latter bank that the money was wanted to be used for the Bank of Sycamore, and that it was desired to be borrowed on the strength of the notes which were signed by himself and two other individuals who were officers of the bank; and that the purpose in doing so was to prevent the bank's statement from showing an increase of its bills payable. Upon these allegations relative to the notes, the cashier was acting as a principal rather than in a fiduciary capacity for the bank of which he was cashier. To hold otherwise would be to impute to the cashier of the Bank of Sycamore an intent to conceal the actual financial status

51

of his bank, and violate the provisions of the Civil Code, § 2288 et seq., in regard to the making and publishing of verified statements by State banks; and to the lending bank an attempt to aid the Bank of Sycamore in such unlawful design. The law will not indulge such imputation, but will look upon the transaction as an individual undertaking by the makers of the notes as they executed them. If it should be ruled that the transaction was one between the two banks and there was a collusive arrangement between them to enable the Bank of Sycamore to conceal its financial condition, it would be contrary to public policy, and the law would leave them where it found them. Clark on Contracts (3d ed.), 348. A different ruling is not required by the fact that, by instruction of the makers of the notes, the money went to the credit of the Bank of Sycamore. The money would belong to the makers of the notes who did the borrowing, and they could order it placed to the credit of the Bank of Sycamore if they desired. The case of *Logan* v. *Bond*, 13 *Ga.* 192, is in point on this question. That was a case in which a partner borrowed money upon his individual note, to be used in the business of the firm of which he was a member, and on insolvency of the firm the lender of the money sought in equity to subject firm assets to the payment of the debt. It was held that the money, having been borrowed on the partner's security only, did not become a partnership debt, although applied to partnership purposes. Under a proper construction of the petition for intervention under consideration, the makers of the notes were the debtors of the National Bank of Tifton, and that bank could not maintain an action upon the notes against the Bank of Sycamore. It follows that the petition did not allege a cause of action, and it was erroneous to overrule the general demurrer.

*Judgment reversed. All the Justices concur.*