### 15359. HALL *v.* VANN, receiver.

1. "The pawnee may sell the property received in pledge after the debt becomes due and remains unpaid; but he must always give notice for thirty days to the pawner of his intention to sell, and the sale must be in public, fairly conducted, and to the highest bidder, unless otherwise provided by contract." Civil Code (1910), § 3530. Where one signs a form note containing the clause: "I . . hereby pledge the following collateral and property which I affirm to be unincumbered," followed by a space for the description of collateral, but which space is left in blank, and containing a power of private sale without notice, only "of *said* collaterals" (italics ours), the note does not upon its face confer authority upon the pledgee to dispose of collateral pledged at the time, by a private sale without notice. The facts in this case conclusively showed a conversion of the property pledged.

2. The evidence in this trover action by the pledgor against the pledgee, for a conversion of the pledge by an unauthorized sale, demanded a finding against the plaintiff upon the theory of ratification, and the court did not err in directing a verdict for the defendant, notwithstanding the erroneous ruling in reference to the measure of damage, which the plaintiff otherwise would have been entitled to recover.

DECIDED APRIL 25, 1924.

Complaint; from city court of Miller county—Judge Geer. January 14, 1924.

*P. D. Rich,* for plaintiff.

*N. L. Stapleton, T. S. Hawes,* for defendant.

BELL, J. M. M. Hall filed a trover suit against the First National Bank of Colquitt for the conversion of twenty bales of cotton which he deposited with the bank as security for a loan. Before the trial the bank went into the hands of a receiver, and J. R. Vann, the receiver, was made a party defendant in its stead. The case was submitted to the court and jury on an agreed statement of facts, upon which the court directed a verdict in favor of the defendant. The plaintiff has excepted to the overruling of his motion for a new trial.

The agreed statement was as follows: "On October 16, 1920, Hall gave the bank a note for $1,326.26, due January 4, 1921, and

deposited with the bank 20 bales of cotton, weighing 10,261 pounds, as collateral security. The cotton was sold by the bank on January 13, 1921; the bank sold the cotton without the knowledge or consent of M. M. Hall, and Hall did not find out that the cotton was sold until April or May, 1921. The bank credited the note for $1,326.26 [with] the sum of $1,097.06 from the sale of the collateral cotton, which amount was arrived at as follows: selling price $1,230.32; expenses including ginning, bagging, ties, and warehouse charges, $133.26, leaving a balance of $1,097.06. This sum deducted from the principal of the note left a balance due the bank, $229.20. In addition to the cotton collateral note, Hall owed the bank one note for $346.88, one for $25, and one for $50. On June 6th, 1921, Hall gave to the bank a note for $698.48, which included the $229.20 balance on the cotton note, the $346.88, the $25 and the $50 notes and interest on each to that date, and to maturity of the $698.48 note. On September 17, 1921, Hall paid the note for $698.48 by check for $695, and was rebated $3.48 interest. The bank never made any other accounting or settlement of any kind with Hall touching the cotton. The highest proven market value of the collateral cotton from the date of the conversion or sale thereof to the date of the trial was 33¾ cents per pound. At the time the cotton was sold by the bank it sold for its then fair market value. The bank did not demand any additional collateral or security at any time, nor make any demand for the payment of the note, after the note fell due, and during January, 1921, M. M. Hall went to the bank and told its proper officers that he did not want his cotton sold, and asked them if they wanted any additional collateral or security, and they said they did not want any additional collateral or security, and would let him know if they desired any additional collateral. A copy of the form of the note given by Hall to the bank is attached hereto. M. M. Hall swears that he did not know on June 6, 1921, when he gave the note for $698.48, that said note included the balance on the note for $1,326.26, but thought said note simply included some small notes which Hall owed the bank. Hall demanded an accounting of the bank for his collateral cotton in May, 1923, and had made no previous demand, and swears that he thought all the time he owed a balance of $1,025.00 on the cotton note, which S. M. Watson told him after Watson went out of the bank, but

the bank holds no such item. If plaintiff is entitled to recover the highest proven value, the amount of his verdict after deducting expenses of handling cotton and the amount he has been credited with will be $2,232.77."

The copy of the note referred to in the statement contained the following: "And to secure the prompt payment of this note, or any other indebtedness due or to become due, the First National Bank, of Colquitt, Ga., or the holder of this note, I being possessed of the legal right and title to make said deposit, hereby pledges the following collateral and property which I affirm to be unincumbered: I hereby agree to pay 10 per cent. attorney's fees if this note is given for collection, and it is agreed that other collateral of equal value may be substituted for the above with the consent of said First National Bank of Colquitt, Ga., or the holder of this note, which collateral when substituted shall be subject to this pledge. And I hereby constitute the president or cashier of the First National Bank, of Colquitt, Ga., or the holder of this note, jointly and severally my attorney or attorneys, to collect, sell, or otherwise dispose of the whole, or any portion of said collaterals, either at public or private sale and without notice to me of any intention to sell, either for the purpose of paying said note when due, or in case margins shall not be furnished it when required. And I authorize the said First National Bank, of Colquitt, Ga., or the holder of this note to become the purchaser on its own account, at such sale, and for that purpose in my name to sign and execute any transfer, conveyance, or instrument in writing, whether under seal or otherwise, which may be necessary and lawful in the premises."

1. As shown in the stipulation, "the bank sold the cotton without the knowledge or consent" of the plaintiff. The defendant in error insists, however, that the bank was authorized to sell the cotton under the clause in the note set out above. No cotton or other collateral was described therein, and the note was in blank in so far as it related to collateral. Whether by parol the blank might have been supplied or the intention of the parties shown to include the property sued for is not now for decision. This was not done, and no power was given to the bank by the note upon its face to sell the cotton without a compliance with the Civil Code, § 3530, which provides: "The pawnee may sell the property re-

ceived in pledge after the debt becomes due and remains unpaid; but he must always give notice for thirty days to the pawner of his intention to sell, and the sale must be in public, fairly conducted, and to the highest bidder, unless otherwise provided by contract." Thus, the agreed statement demands the conclusion that the cotton was converted by the pledgee.

2. This court held in *Kennedy* v. *Dexter Banking Co.*, 29 *Ga. App.* 95 (113 S. E. 819), that "Where property has been pledged to secure a debt and is wrongfully sold by the pledgee, who nevertheless applies a part of the proceeds to the payment of the debt and tenders the balance to the pledgor as a settlement of their respective rights in the property, an acceptance by the pledgor of the sum tendered, with full knowledge at the time of all the facts, will be held a ratification of the sale, although such acceptance was under protest; the pledgee not having at the time agreed that such acceptance might be made without prejudice." See to the same effect *McElmurray* v. *Heard*, 30 *Ga. App.* 677 (1) (119 S. E. 220). In *Reynolds Banking Co.* v. *Neisler*, 130 *Ga.* 789 (61 S. E. 828), the bank wrongfully converted the collateral which it held as security for certain notes of Neisler, and the proceeds thereof, which were credited, satisfied all the notes except one, upon which a balance remained due of $2.80. The bank immediately sent Neisler a full report of the sales and the application of the proceeds, returning all notes to him duly cancelled except the one left unsatisfied. About two weeks afterwards, when demand was made upon him for payment of the remaining $2.80, he complained for the first time that the cotton had been sold without his authority, but paid this small balance, and the note was surrendered to him. There was no effort then or afterwards to return the cancelled notes, but, after full notice of the sale and of the fact that the proceeds thereof had been applied to their satisfaction, he continued to hold them and instituted a suit in trover for the cotton. The Supreme Court held that under these facts a verdict for the plaintiff was unauthorized.

The case before us, however, is different from any of those cited. The plaintiff "swears that he did not know on June 6, 1921, when he gave the note for $698.40, that said note included the balance" of $229.20 due on the note for $1,326.26, which the cotton had been pledged to secure and upon which the proceeds of the cotton

had been credited, "but thought that said note [that is, the new note executed on June 6th] simply included some small notes which he owed the bank." He further swears "that he *thought all the time* he owed a balance of $1,025 on the cotton note [that is, the note which the cotton was pledged to secure], which S. M. Watson told him after Watson went out of the bank" (italics ours). It is true that elsewhere in the agreed statement it is stipulated in effect that the plaintiff learned of the wrongful sale of his cotton in April or May, 1921, but it is nowhere shown therein that he ever did anything to ratify it, unless he did so in giving the note of June 6, or in later paying it on September 17. It is shown "that the bank did not demand any additional collateral or security at any time, nor make any demand for the payment of the note after the note fell due,"—referring to the note for $1,326.26. If Hall, when he gave or paid the note of June 6, knew that it included a balance upon the large note which remained after crediting the proceeds of the sale, this would amount to a ratification; and while there certainly were circumstances from which the inference of such knowledge would be authorized, it was not demanded. The defendant in error asserts that the large note, after being in part paid by the proceeds of the cotton and in part renewed by the note of June 6, was surrendered to the plaintiff. Whatever may have been the actual occurrence, such surrender of the note is not shown in the agreed statement. What would be the effect of this fact alone is not now for decision.

The conclusion is not demanded that the plaintiff ratified the sale because the note executed by him on June 6 included a balance of the larger note, which remained after the proceeds of the sale were credited, it appearing that the plaintiff may not have known of such fact. But the plaintiff admits that he knew of the unauthorized sale of his cotton for two years before he brought the action for its recovery. What of his silence, or of his silence intermingled with his conduct and subsequent dealings with the bank, even though in reference as he thought, *to a different matter?* Where property is pledged to secure a debt, and the debt is not paid at maturity, the pledgee becomes the agent of the pledgor in the sale of the property, and if he makes an authorized sale of it, it is the duty of the pledgor, as principal, to repudiate the transaction in a reasonable time, as in other cases of principal and agent, or

he will be held to a ratification by silence. *Brooke* v. *Cunningham,*
19 *Ga. App.* 21 (5) (90 S. E. 1037). "To bind the principal, there
is no necessity for a positive or direct confirmation on his part, of
the act of the agent, but it may arise by implication, from the acts
or proceedings of the principal in pais. . . And for this purpose
the acts and conduct of the principal are construed liberally in
favor of the agent. Slight circumstances and small matters will
sometimes suffice to raise the presumption of ratification." *Byrne*
v. *Doughty,* 13 *Ga.* 46 (3) (4), 52; *Strong* v. *West,* 110 *Ga.* 382
(1), 387 (35 S. E. 693). "If the agent, without authority, should
do any act, and the principal, after knowledge of the fact, should
make no objection, but acquiesce for a length of time—especially
where such acquiescence cannot be explained or otherwise accounted
for; and which has a tendency to mislead the agent; in all such
cases, and many others, which might be supposed, the law would
construe such silence as contrary to the duty of the principal, and
he would be held bound by it." *Owsley* v. *Woolhopter,* 14 *Ga.* 124
(6), 128; *Mapp* v. *Phillips,* 32 *Ga.* 72 (4), 81.

Notice will be taken that cotton is a commodity of constantly
fluctuating value. If the plaintiff had repudiated the transaction
promptly upon its discovery, the defendant might have been able to
protect itself. The pledgor knew that his note was past due and
heard nothing from the bank about it, although it called upon him
on June 6, 1921, to give renewals for other indebtedness. He had
known then since April or May that the cotton had been sold. Did
he not under these circumstances suppose that the bank's failure to
mention the larger note was because it was relying upon his approval
of the sale of the cotton? He had a further transaction with the
bank on September 17, 1921, when he paid the note of June 6,
still without a reference to the cotton. The cotton was sold in
January, 1921, for approximately 13 cents per pound. Never a com-
plaint did he make until some two years thereafter when the price
of cotton had advanced to 33-3/4 cents per pound, although in the
meantime he had dealings with the bank, which would naturally
have suggested some mention between them of the subject-matter of
this suit, unless all was satisfactory on both sides.

While it is true that "whether or not . . ratification has re-
sulted is usually a question of fact, to be determined by the jury"
(*Coursey* v. *Consolidated Naval Stores Co.,* 22 *Ga. App.* 538 (3),

96 S. E. 397), we think that the only inference that can be reasonably drawn from the entire facts of this case is one of ratification. Such inference being demanded as a matter of law, the trial judge did not err in directing a verdict in favor of the defendant. See *Thompson* v. *Neely,* 32 *Ga. App.* 131 (123 S. E. 171); *Pilcher* v. *Smith,* 31 *Ga. App.* 606 (121 S. E. 701).

The trial court ruled that the measure of the plaintiff's damage should be the actual value of the property at the time of the sale. This was error. This action was in trover. In such a case the plaintiff pledgor, if he is not otherwise concluded, may, as in other trover cases, elect to recover the highest value of the property proved between the date of the conversion and the trial, subject to the condition that if at the time of the verdict he owed the defendant anything upon the debt which the cotton had been pledged to secure, this should be deducted. *Van Arsdale* v. *Joiner,* 44 *Ga.* 173 (4).

The court's ruling as to the measure of damages would have been sound if the bank had sued the defendant upon the debt and he had sought to recoup for the conversion without alleging a special contract fixing the terms of the pledge. *Waring* v. *Gaskill,* 95 *Ga.* 731 (2) (22 S. E. 659); *Harrell* v. *Citizens Banking Co.,* 111 *Ga.* 846 (1) (2) (36 S. E. 460); *Campbell* v. *Redwine,* 22 *Ga. App.* 455 (3) (96 S. E. 347); *Kennedy* v. *Buckeye Cotton Oil Co.,* 29 *Ga. App.* 167, 172 (114 S. E. 79). But where the debtor takes the initiative and brings an action in trover, he is entitled to all the benefits of that character of action. Again, where the debtor is sued and sets up a conversion of collaterals by his creditor, by way of recoupment, and shows a special contract fixing the terms of the pledge, the measure of the damages which he may recoup will depend upon the nature of the agreement. These questions are more fully discussed in the case of *Bennett* v. *Tucker,* 32 *Ga. App.* 288 (123 S. E. 165), and in our decision in that case will be found a statement of what we conceive to be the reasons for the propositions here stated upon the subject of damage. But the verdict directed for the defendant being demanded upon the theory of ratification, the error in the ruling on the measure of damages was harmless.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*