17953.  ROBINSON v. BELCHER.

1. Generally speaking, the object of the signatures of both parties to a contract is to show mutuality, but this may be shown in other ways. Thus, where the person sought to be charged has signed, an acceptance by the opposite party renders the agreement operative. An acceptance of the agreement as thus signed, unless otherwise legally impeached, will be inferred from the receipt by the opposite party of the benefits flowing to him under the contract as written. *Robson* v. *Weil,* 142 *Ga.* 429, 431 (83 S. E. 207); *Aspironal Laboratories* v. *Rosenblatt,* 34 *Ga. App.* 255 (3) (129 S. E. 140).

2. Where the petition in a suit on an alleged oral contract, for the unpaid balance of the purchase price alleged to be due for goods sold and delivered, indicates that when the goods were delivered at the warehouse of the defendant, the plaintiff received an order drawn on the defendant, signed by the defendant's warehouse agent, for the payment of the described commodity in a named quantity and at a stated price, and that the plaintiff thereafter presented the order to the defendant and received payment for the commodity previously delivered at the price and in the quantity named in the order, thereupon receiving from the defendant another memorandum, signed by the defendant through his agent, setting forth such payment for the named commodity in the same quantity and at the same price as had been specified in the previous order, the plaintiff will not be permitted, without attacking the validity of such memoranda, to vary the terms of the binding contract, as thus reduced to writing in its entirety, by showing a contrary previous oral agreement under the terms of which the price set forth by the terms of the written memorandum, thus signed and accepted, was not intended to constitute the full purchase price. The rule would be different if the memorandum evidencing the terms of the accepted and executed contract had indicated that it was not intended to speak the whole contract. Had such been the case, parol evidence would have been admissible to supply any deficiency

---

Accord and Satisfaction, 1 C. J. p. 528, n. 69.
Contracts, 13 C. J. p. 276, n. 80; p. 305, n. 76, 77, 79, 80; p. 714, n. 78.
Evidence, 22 C. J. p. 1098, n. 96; p. 1248, n. 29; p. 1283, n. 93; p. 1286, n. 1.

not inconsistent with the written terms actually expressed. *Roberts v. Investors Savings Co.*, 154 *Ga.* 45, 52 (113 S. E. 398); *Gibson* v. *First National Bank*, 158 *Ga.* 350 (123 S. E. 606).

3. Under the rules of law above indicated, the court should have sustained the general demurrer to the petition.

DECIDED NOVEMBER 19, 1927.

Complaint; from city court of Cairo—Judge Rigsby. December 16, 1926.

*S. P. Cain,* for plaintiff in error. *W. H. Duckworth,* contra.

JENKINS, P. J. C. C. Belcher brought suit against W. H. Robinson, alleging that about June 10, 1923, he entered into an oral contract with the defendant, whereby he agreed to sell to the defendant his entire crop of collard seed for that year, and to accept, upon delivery of the seed, payment at 13 cents per pound, and to accept the verbal guarantee of the defendant to pay him, in consideration of the delivery of such seed, such sum, in addition to the payment provided for on delivery of the seed, as would make the total payment equal the greatest price per pound received by members of the collard seed association at Cairo for seed grown that year; that the defendant contracted and agreed to pay the plaintiff 13 cents per pound for all of his collard seed grown during that year, and to offer to pay him such additional sum as would bring the entire purchase-price up to the greatest price received by members of the collard seed association; that pursuant to the contract he delivered to the defendant 5173 pounds of collard seed, and the defendant's agent to whom the seed were delivered furnished him for each wagon-load of seed a ticket as follows:

"Cairo, Georgia, June 19, 1923. Payable only at office W. H. Robinson.

"Mr. C. C. Belcher. Commodity—Collard Seed Wagon-load gross wt. Tare wt.

"Net wt. 2,359—price 13¢. C. B. W. Warehouseman."

Plaintiff received three such tickets, the aggregate weights of the loads therein receipted for being 5173 pounds. When the deliveries were completed the defendant took up the tickets issued by the warehouseman, and paid the plaintiff for all of the seed at 13 cents per pound, issuing to him a writing as follows:

"Cairo, Ga. June 30, 1923. Bought of Mr. C. C. Belcher

"5173 lbs. collard seeds at 13¢, $672.49. Credit account, 672.49.

"W. H. Robinson per R. L. F."

It is alleged that the collard seed association at Cairo paid its members thirty cents per pound for seeds harvested from the crop planted in that year, and that the defendant therefore owes the additional sum of 17 cents per pound for all of the collard seed delivered. It is alleged by paragraph 6 of the petition that "the contracts or agreements set out in paragraph 1 hereof were either two contracts, else one with two complete clauses and binding obligations, the first being absolute and unconditional, the latter being conditional upon first the performance of the first, then upon price paid by the association, the performance of the first on the part of plaintiff furnishing consideration for the second; and it is upon the latter that this suit is based, the former having been completely performed and fulfilled."

The defendant interposed a general and special demurrer, contending thereby that the petition failed to set forth a cause of action and that the allegations showed a valid written contract between the parties, which had been fully performed, and that the suit seeks to vary the terms of the written contract. By the special demurrer it is contended that the allegations setting out the contract, and those of paragraph six, above quoted, setting out the plaintiff's construction of the contract and the promise upon which the suit is based, are "vague, indefinite, and contradictory, in that it is alleged that the suit is based on one or more contracts, and does not in a positive manner allege the cause of action sued on, in that it alleges that the cause of action consists of one contract or two contracts." To an order overruling the demurrers exception was taken.

Counsel for defendant in error, in his able and ingenious brief and argument, sets forth the contention that since there can be several independent clauses of a contract, satisfaction of one will in no wise alter or satisfy the others. He cites, in this connection, *National Duck Mills* v. *Catlin,* 10 *Ga. App.* 240 (73 S. E. 418), and *Carlton* v. *W. & A. R. Co.,* 81 *Ga.* 531 (7 S. E. 623). In the *Carlton* case the Supreme Court held that a person was not bound by his relinquishment of damages based upon a receipt for wages to which he was unquestionably entitled, there being, in such a case, no consideration for the relinquishment. The contention, as applied to the instant case, is that the plaintiff should not be debarred from collecting the alleged balance of the purchase

price under one phase of the alleged agreement because he had accepted the initial portion of the purchase price under another phase of the contract amounting to an independent obligation. As we see it, the trouble with this reasoning is that the suit is maintained for an alleged unpaid portion of the purchase price of the seed; that what constitutes the purchase price is the only question that the petition seeks to determine, and that this question is settled conclusively by the unattacked memoranda attached to to the petition, amounting to a fully executed valid written contract between the parties, which sets forth the purchase price of the commodity as being that which the plaintiff has already had and received. These memoranda do not undertake, as in the *Carlton* case, to extinguish an independent disputed liability in consideration of the satisfaction of another which is undisputed. They merely set forth the complete terms of a contract of purchase and sale, including the price which the plaintiff was to receive; and in fact did receive. The averments of the petition which refer to the alleged prior oral contract do not, as in the *Carlton* case, set up two separate, distinct, and independent claims, but both the conditional and unconditional portions of the purchase price together constitute the amount that the defendant was due in exchange for the commodity furnished. If the memoranda fix and determine the purchase price, parol evidence of a previous oral understanding with reference thereto can not be employed to enlarge, alter, or contradict such terms of the instruments. Counsel cites also the ruling made by the Supreme Court in the case of *Armour* v. *Ross,* 110 *Ga.* 403 (35 S. E. 787). The seventh division of the syllabus in that case is as follows: "If one who has two entirely distinct demands against another accepts payment of one and gives a receipt therefor, there being at the time no mention of the other or any attempt whatever to settle or adjust it, a mere recital in the receipt that it is 'in full payment of all claims to date of whatsoever nature' is without consideration so far as relates to the unsettled demand, and does not estop the person signing the receipt from afterwards asserting that demand, nor render it incumbent upon him before so doing to refund the money received upon the claim as to which there is no dispute." We are unable to see that the principle of law just quoted is such as can aid the plaintiff vendor in the instant case. Here, as has already been

said, the suit is undoubtedly maintained for an alleged unpaid portion of the purchase price of the collard seed. That a portion of the contract price remains unpaid is the basis of the complaint, and constitutes the gravamen of the suit. It follows, therefore, if the memoranda, as we have construed them, unequivocally show that the purchase price was a fixed sum, and that it was received and accepted as such by the vendor, which is undisputed, he can not thereafter be allowed to set up a prior oral agreement for the purpose of showing that the purchase price thus paid and accepted was not the true purchase price, but was a different and greater sum. In the *Armour* case the receipt did not purport to deal with the subject-matter of the demand set forth by the petition, but with "entirely distinct demands," whereas in the instant case the unattacked memoranda attached to the plaintiff's petition expressly deal with the precise subject-matter that the petition does, to wit, the amount of the purchase price of the seed. If by the terms of the memoranda reference had been made to a prior contract of purchase and sale, or if the price which was to be paid for the commodity had not been expressly stipulated, there would then have been no reason why the previous oral contract could not be established, but since the memoranda purport to be, and in fact are, complete and explicit in every essential term and element of the purchase and sale, the party who first accepted and then collected the order memoranda, without in any way attacking their validity, is as much bound by their terms as was the party who signed them. It makes no difference whether a written instrument be styled an order, receipt, memorandum, or what not, provided it evidences and sets forth a complete, unambiguous contract between the parties. If it does, then any such instrument is subject to the same rules as govern ordinary contracts in writing, and its stipulations can not be contradicted by evidence of a prior or contemporaneous parol agreement inconsistent with the written terms actually expressed. *Southern Bell Telephone &c. Co.* v. *Smith,* 129 *Ga.* 558 (59 S. E. 215); *Pennsylvania Casualty Co.* v. *Thompson,* 130 *Ga.* 766 (61 S. E. 829). In the instant case, the writing either sets forth the purchase price, that is, the entire purchase price, or the stipulation as to purchase price has no meaning at all. Since, as we construe it, there is no possible sort of ambiguity or incompleteness with reference to

every essential element of the contract, including the amount of the purchase price as stated, any attempt to contradict the stipulation with reference to the stated purchase price by showing that the unimpeached writing does not express the truth with reference thereto, but that, under a prior oral understanding, the true and correct purchase price was a much larger sum than the one expressed, would be unauthorized.

It is contended that before the writings can operate to limit the amount which the seller was entitled to recover under the alleged prior oral contract, they must amount to an accord and satisfaction of the previous oral agreement, based upon a valid consideration. It is true that in order to enforce an *executory* contract set up by way of accord and satisfaction for the purpose of altering a previous valid agreement, it is necessary that the accord and satisfaction, like all other contracts, be supported by a consideration. *Riley* v. *London Guaranty &c. Co.*, 27 *Ga. App.* 686 (109 S. E. 676). However, where the subsequent written agreement does not purport to operate as an accord and satisfaction, and makes no reference to any prior oral stipulation, but where the writings constitute, in and of themselves, a full and complete contract, so as to supersede or extinguish any previous contrary oral understanding, it is begging the question to attack the validity of the written instrument because inconsistent with the terms of a previous oral agreement, thus rendered invalid and incapable of proof. The whole difficulty with respect to enforcing the alleged prior contradictory oral contract is that when it is shown to run counter to the terms of a complete subsequent written contract, the oral agreement becomes of no force and effect whatever, and so remains unless and until the written agreement is otherwise successfully attacked. See generally Reid v. Diamond, 85 Federal 193 (2) ; 5 Wigmore, Evidence, § 2430 (3). It does not appear that the ruling made by this court in *Goldsmith* v. *Marcus*, 7 *Ga. App.* 849 (68 S. E. 462), has application here, since in the present case the petition shows that the plaintiff accepted the writings and handled them by having them cashed, and under these circumstances, in the absence of any allegation to the contrary, it should be presumed, construing the petition most strongly against him, that the plaintiff actually knew of their contents. No question is presented, and no opinion is expressed or intima-

27

tion given, as to whether or not it would be possible for the plaintiff to successfully attack the writings as having been accepted inadvertently.

*Judgment reversed. Bell, J., concurs. Stephens, J., dissents.*