18459. BLOOMBERG-MICHAEL FURNITURE CO. v. URQUHART.

DECIDED JUNE 16, 1928.

*Lawrence & Abrahams, Andrew J. Ryan Jr.,* for plaintiff.
*Lawton & Cunningham,* for defendant.

BELL, J. (After stating the foregoing facts.)

1. One of the grounds of the motion for a new trial was that the court erred in instructing the jury that the defendant was charged with the exercise of ordinary care, the contention being that the defendant, by his own testimony, was a common carrier under the laws of Georgia and therefore bound to use extraordinary care. The court did not err in giving the charge complained of. In the first place, the petition failed to allege that the defendant was a com· mon carrier, but proceeded upon the theory that he was a private carrier only, and, under section 2711 of the Civil Code (1910), any person undertaking to transport goods as a private carrier is bound only to ordinary diligence. Furthermore, even· if the suit could be construed as charging the defendant as a common. carrier, there was evidence from which the jury could have inferred that the defendant was not at the time of the transaction with the plaintiff engaged in the business of a common carrier, and had neither dealt with nor become obligated to it as such. The defendant testified: "We did not hold ourselves out to take anybody's freight offered to us. We would make a specific engagement for each piece of freight." F. M. Helmly, who represented the defendant in arranging for the shipment, testified as follows: "No, it is not a fact that Mr. Urquhart took any shipments that anybody offered him of anything. We would not take any shipment of anything. Before shipment Mr. Urquhart would have to make a special contract with you. We reserved the right to take the shipments we

wanted and decline what we didn't want. For instance, if a man came to us with a carload of lumber . . we would not accept it unless we wanted it or could carry it to advantage. We reserved the perfect right to decline. As a matter of fact we declined a great many shipments. A great many people tried to ship by our barge and we would not let them. We only took what we wanted." Section 2712 of the code provides as follows: "One who pursues the business constantly or continuously for any period of time, or any distance of transportation, is a common carrier, and as such is bound to use extraordinary diligence. In cases of loss the presumption of law is against him, and no excuse avails him unless it was occasioned by the act of God or the public enemies of the State." In *Fish* v. *Chapman,* 2 *Ga.* 349 (2) (46 Am. D. 393), it was held that "To make a person a common carrier, he must exercise it as a common employment; he must undertake to carry the goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire as a business, and not as a casual occupation pro hac vice." See also *Central of Ga. Ry. Co.* v. *Lippman,* 110 *Ga.* 665 (36 S. E. 202, 50 L. R. A. 673). There is no contention that the judge erred in not submitting to the jury, as an issue of fact, the question of whether the defendant was a common carrier. The assignment is that the charge of the court was error because as a matter of law the defendant was such a carrier. Under the above evidence this assignment can not be sustained.

2. Several grounds of the motion for a new trial complain that the court erred in submitting to the jury the above-quoted provisions of the instrument issued by the defendant on the loading of the goods, and said by him to constitute a bill of lading, but claimed by the plaintiff to be a mere receipt for the cargo, without any sort of force as a contract of carriage. The court in several charges made reference to the stipulations providing to the carrier the right to use lighters, and requiring that, in case of loss, damage, or delay, certain notice should be given by the shipper as a condition precedent to recovery. The contention of the plaintiff in error is in effect that the court erred in treating the instrument as a bill of lading, determinative of the rights and liabilites of the parties, and in not holding to the contrary, as a matter of law, that the stipulations contained therein were in nowise binding or en-

forceable as a contract. The position of the plaintiff in error is that since the document was signed only by the agent of the defendant and was not expressly assented to in writing or otherwise by the plaintiff, the provisions thereof should not have been considered.

It is true that the defendant as carrier was the only signatory party. It is further true that the plaintiff was without knowledge of the contents of this paper, unless through Yellow Cab Company, until after it was issued and the transportation begun, and for the purposes of this case we will assume that the Yellow Cab Company had no authority to make a special contract containing such provisions as those referred to.

The bill of lading was evidently forwarded to the plaintiff by its agent, in due course; for on April 23, 1926, the plaintiff wrote to the defendant a letter seeking a settlement of the damages and containing the following statement: "We enclose you B/L covering shipment of January 12th, 1926, which you made for our account to Yellow Cab Company, Savannah, Ga., to us to Miami, Florida, freight prepaid." It also appears that the plaintiff had previously placed the bill of lading in the hands of M. C. Praig, its agent to receive the shipment in Miami. Praig testified: "On arrival of the goods at destination there was a man there supposed to do the checking, and he asked me if I had a bill of lading for the goods. I showed him the bill of lading. He said, 'Go ahead and handle yours.'"

So, even though the cab company may not have been empowered as the plaintiff's agent to enter into an agreement embodying the stipulations which the plaintiff now claims it never assented to, there was in the evidence ample ground for inferring that the plaintiff ratified the act of that company in so doing. In the absence of anything to the contrary, the plaintiff presumably acquainted itself with the several provisions of the agreement before adopting the same as its own act, and there is nothing to show any effort at repudiation until the instrument was raised against it after litigation begun. *Pilcher* v. *Smith,* 31 *Ga. App.* 606 (121 S. E. 701); *Thompson* v. *Neely,* 32 *Ga. App.* 131 (123 S. E. 171); *Hall* v. *Vann,* 32 *Ga. App.* 281 (2) (123 S. E. 172).

Counsel for the plaintiff in error argue that as to the question now under consideration the case is governed by section 2726 of the Civil Code (1910), and that on application of the principles

therein expressed the special provisions of the bill of lading relied on by the defendant can not be regarded as a part of the contract. That section provides as follows: "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby." Even under this section a shipper may be bound by the terms of the bill of lading without signing it where it is duly executed by the carrier and assented to by the shipper. In *Kavanaugh* v. *So. Ry. Co.*, 120 *Ga.* 62, 66 (47 S. E. 526), the Supreme Court said that if the contract had been executed in Georgia, it would not be binding unless it was signed by the shipper; but in *So. Express Co.* v. *Hanaw,* 134 *Ga.* 445, 449 (67 S. E. 944, 137 Am. St. R. 227), this expression in the *Kavanaugh* case was regarded as "an inadvertence, meaning that there must be an express agreement by the shipper, the most ordinary method of showing such agreement being by signing." Compare *Robinson* v. *Belcher,* 37 *Ga. App.* 412 (140 S. E. 412); 36 Cyc. 213. But assuming that the contention of the plaintiff should be sustained as the correct and proper view if the defendant should be dealt with as a common carrier, the argument can not stand except upon that hypothesis; whereas, under the evidence, the jury were authorized if not required to find that the defendant was a private carrier only; and the provisions of section 2726 have nothing to do with private carriers. We are unable in any view to find place for the application of the Georgia rule as above expressed. The rule is not only inapplicable in case of private carriers, but could not be invoked in the present case even if the defendant were a common carrier; for, to treat the case as a controversy between a shipper and a carrier of that class, the transportation was by sea and was of such a character as to be governed by the acts of Congress, the bill of lading and the principles of the common and maritime laws as accepted and enforced by the Federal courts, Congress having by the passage of various acts so manifested its intention to take possession of the subject of the liability of carriers in such cases and to supersede all State regulations regarding the same as to invalidate the provisions of any State law upon the subject. It is sufficient to mention only the Act of March 3, 1851, known as the limited liability act (Lord *v.* Goodall &c. S. Co., 102 U. S. 541 (26 L. ed. 224); *Headrick* v. *Va. & Tenn. Air-*

*Line Ry. Co.*, 48 *Ga.* 545), and the act of February 3, 1893, commonly called the Harter act (27 Stat. 445, c. 105, U. S. Comp. St. 1901, p. 2946), as to the applicability of which to a shipment of this sort, see The Silvia, 171 U. S. 462 (43 L. ed. 241) ; The Chattahoochee, 173 U. S. 540 (19 Sup. Ct. 491, 43 L. ed. 801, 806) ; Knott *v.* Botany Mills, 179 U. S. 69 (21 Sup. Ct. 30, 45 L. ed. 90) ; *Levy's Son & Co.* v. *Gibson Line,* 130 *Ga.* 581 (61 S. E. 484). In Butler *v.* Boston &c. S. Co., 130 U. S. 527 (9 Sup. Ct. 612, 32 L. ed. 1017), the Federal Supreme Court said: "As the constitution extends the judicial power of the United States to 'all cases of admiralty and maritime jurisdiction,' and as this jurisdiction is held to be exclusive, the power of legislation on the same subject must necessarily be in the national legislature, and not in the State legislatures." See also Norwich & N. Y. Trans. Co. *v.* Wright, 80 U. S. (13 Wall.) 104 (20 L. ed. 585) ; and compare Southern Express Co. *v.* Byers, 240 U. S. 612, 614 (36 Sup. Ct. 410, 60 L. ed. 825, L. R. A. 1917A, 197) ; Adams Express Co. *v.* Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257) ; Chicago &c. R. Co. *v.* Miller, 226 U. S. 513 (33 Sup. Ct. 155, 57 L. ed. 323).

This, of course, does not mean that a case of this character may not be cognizable in a State court. 1 C. J. 1253, and cit. The point here is, that where the principles of the maritime law are applicable, the rights of the parties should be determined thereunder whether the proceeding be instituted in an admiralty court or in a common-law court. Carlisle Packing Co. *v.* Sandanger, 259 U. S. 255 (42 Sup. Ct. 475, 66 L. ed. 927) ; Robins Dry Dock Co. *v.* Dahl, 266 U. S. 449 (45 Sup. Ct. 157, 69 L. ed. 372). Having seen that if the defendant was a common carrier, all questions as to the rights of the parties are to be adjudicated according to principles that would govern in Federal jurisdictions, we think it plain that the plaintiff, on that hypothesis, should be held to the stipulations relied on by the defendant and submitted by the judge in his charge as effective terms of the contract of affreightment. In N. Y. Central &c. R. Co. *v.* Beaham, 242 U. S. 148 (37 Sup. Ct. 43, 61 L. ed. 210), it was held that a stipulation limiting a carrier's liability for baggage, printed on the face of the ticket and accepted by the passenger, was presumed to have been assented to although the passenger did not read it; and in American Ry. Ex-

press Co. *v.* Lindenberg, 260 U. S. 584, 591 (43 Sup. Ct. 206, 67 L. ed. 415), it was said that a shipper, by receiving and acting upon an express receipt for an interstate shipment, signed only by the carrier, assents to its terms, and it thereby becomes the written agreement of the parties. Section 4 of the Harter Act makes it the duty of the owner of the vessel or its agent to issue to shippers a bill of lading; and in negotiating for transportation to which the act would be applicable, the shipper would supposedly contemplate that a bill of lading would be issued to him on the loading of the cargo.

In what we have just said we have assumed that the Federal laws referred to in that connection, like the provisions of section 2726 of the Georgia code, are applicable only to common carriers, the plaintiff, who is here the plaintiff in error, contending that the defendant was a carrier of that class. If the principles are inapplicable because the defendant was a private carrier, we are still of the opinion that the bill of lading in this case could not have been ignored. Under the ordinary canons of construction, taken with the doctrine of ratification, the plaintiff, by the acceptance of the bill of lading, presumably assented to its terms. *Robinson* v. *Belcher,* 37 *Ga. App.* 412 (140 S. E. 412), supra. The contention of the plaintiff that the contract of carriage was wholly a parol one can not be sustained. In the absence of fraud, accident, or mistake, oral negotiations eventuating in an unambiguous written contract are to be regarded as merged in or extinguished by it and the writing is to be treated as the exclusive medium of ascertaining the agreement to which the contracting parties became bound. *Logan* v. *Bond,* 13 *Ga.* 192 (3) ; *Capps* v. *Edwards,* 130 *Ga.* 146 (3) (60 S. E. 455) ; *Bond* v. *Perrin,* 145 *Ga.* 200 (88 S. E. 954). Thus, in the present case the writing brought forward by the defendant as the bill of lading stands in the way of any consideration of what the plaintiff claims was a mere oral agreement for the transportation. The rights and obligations of the parties can not be determined by the alleged oral agreement, because the writing stands as an impassable barrier between the court and any agreement of that character.

Stipulations like those considered in this case are not unreasonable, and, when assented to upon proper consideration, are valid and enforceable. St. Louis & I. M. R. Co. *v.* Starbird, 243 U. S. 592 (37 Sup. Ct. 462, 61 L. ed. 917) ; Queen of the Pacific, 180

U. S. 49 (21 Sup. Ct. 278, 45 L. ed. 419) ; *So. Ry. Co.* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35) ; *So. Ry. Co.* v. *Tollerson,* 129 *Ga.* 647 (59 S. E. 799). There was no merit in any of the exceptions to the charge of the court having reference to the terms and conditions of the bill of lading.

3. But it is said that the verdict was contrary to the evidence and to the law as given in charge, because it appeared without dispute that three articles of furniture included in the cargo and of the aggregate value of $44.75 were never delivered at the port of Miami and were unaccounted for. As shown in the above statement, the bill of lading provided that in case of failure to make delivery the shipper should give notice of the loss within 30 days after the goods should have been delivered, and that the giving of such notice was a condition precedent to the liability of the carrier for such cause. The evidence authorized the inference that the bill of lading was not complied with in this respect. We can not say that the verdict was unsupported, nor that any error of law was committed.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*