51903. CAHOON v. KUBATZKY.
51904. COPELAND et al. v. KUBATZKY.
51905. KUBATZKY v. CAHOON et al.

MARSHALL, Judge.

These three appeals arise out of the same transaction and involve the question of whether there was a divisible

contract of employment between the parties.

This record establishes that in late October and early November, 1973, Kubatzky, an experienced construction supervisor, began personal negotiations primarily with Cahoon as a principal stockholder and officer of Princess Square Homes, Inc., (the other owner being Copeland) to supervise the proposed construction of condominiums by the corporation. During this period of time the corporation was attempting to obtain construction financing.

On November 19, 1973, a letter of intent was mailed to Kubatzky after being signed by Cahoon and initialed by Copeland. In pertinent part, the letter of intent provided: "We will have final approval of Princess Square Homes during the week of 19th November and close immediately thereafter.

"It is agreeable to both Ralph Copeland and I as principals that you will serve as the general supervisor on the following basis. . ." The letter then set forth the terms of employment including an annual salary of $15,600 payable in $300 weekly installments, the use of an unspecified auto plus operating expenses, the use of an apartment, expense free, a 5% interest in any profits and a bonus if certain of the buildings were completed on schedule. Kubatzky indicated his acceptance of the offer of employment by signing the letter of intent.

On November 19, 1973, Cahoon and Kubatzky began examination of the proposed plans for the construction of the condominiums. Since the funding had not been obtained, site work did not commence, but Kubatzky made suggested changes in the construction details and entered these proposed changes on the architectural drawings. Cahoon admitted that he accepted these proposed changes and that the changes would probably have been incorporated when construction was undertaken. Kubatzky testified that he was competent through his experience to make proposed changes in the architectural drawings and had commenced the detailed study of the construction design and made the recommended changes to the drawings as a part of his employment as construction supervisor. He testified that such design changes by construction supervisors were not uncommon by those qualified to so act. On the other hand

Cahoon testified that he (Cahoon) did not understand that the design study was a function of the construction supervisor and thus was not a part of Kubatzky's employment duties. Cahoon stated that he assumed the duties were "extra" and "voluntarily" assumed by Kubatzky.

When Kubatzky complained about not being on the payroll, Cahoon assured him that he (Kubatzky) would be on the payroll on December 1, 1973. Cahoon denied any such conversation. On or about December 18, 1973, Kubatzky having received no pay (because financing was never obtained) severed his connection with Princess Square Homes and obtained other employment.

Kubatzky brought this complaint in April, 1974, for the breach of the employment contract, seeking $20,000 damages. Cahoon and Copeland defended on the grounds: that the condition precedent to employment (obtaining of construction funding) never occurred, and, therefore, there was no contract; and, that the so-called work performed by Kubatzky was that of a professional architect; that, since Kubatzky was not a licensed architect, he acted in violation of law and could not claim compensation for those services rendered.

After hearing the evidence for both sides, the trial court, sitting without a jury, found in favor of Kubatzky in the amount of $1,200, which represented compensation for four weeks of employment.

Appellants' appeal contained three enumerations of error: (1) the failure of the trial court to dismiss the complaint upon the close of Kubatzky's evidence; (2) the making of findings of fact which were contradictory and unsupported; and (3) the making of a conclusion of law unsupported by the evidence.

Kubatzky's cross appeal contended that the verdict was insufficient and contrary to the law. *Held:*

1. Appellant's first enumeration of error complains that the trial court erred in concluding that there was a valid contract of employment upon which Kubatzky entered and performed compensable services. It is contended: that the so-called contract was entire, and since Kubatzky's complaint was filed prior to the expiration of the term of the contract Kubatzky was not

entitled to damages prior to a breach at the end of the term of employment; that no work was performed other than as an architect; and that architectural design was not part of construction supervision and constituted unlicensed practice of architecture by Kubatzky.

Contrary to their assertion that the contract was entire and indivisible requiring full performance, it is clear that where there is a contract of employment for a year at a stipulated salary, payable monthly, and the employer breaches the contract within its stipulated term, the employee can bring his action at the expiration of each month for the amount of his salary for that month, there being a partial breach of the contract each time the monthly salary is not paid. *Moore v. Kelly & Jones Co.,* 111 Ga. 371 (36 SE 802); *Edison v. Dundee Woolen Mills,* 20 Ga. App. 404 (93 SE 324). Under the terms of the contract, it was divisible and Kubatzky could sue for partial breach of contract. *Rogers v. Parham,* 8 Ga. 190, 193; *Rosenstock v. Congregation Agudath Achim,* 118 Ga. App. 443 (164 SE2d 283).

Furthermore, the facts clearly show Kubatzky's modifications of the architectural drawings were not acts of unauthorized architectural practice. Kubatzky did not hold himself out as or describe himself as an architect or pretend to Cahoon or Copeland to be an architect when in fact he was not. His services therefore were not prohibited by statute nor did they render the contract void or unenforceable. *Boroughs, Dale & Griffin v. St. Elias Church,* 120 Ga. App. 434, 437 (170 SE2d 865); *Brown v. Glass,* 46 Ga. App. 323, 324 (167 SE 722).

Whether, under the facts, the modification of the architectural designs constituted performance of "construction supervisor" duties was a disputed question of fact. A finding of fact by a court sitting without a jury is equivalent to a jury verdict and, hence will be disturbed only when it is clearly erroneous, or shows that the judge was influenced by improper motives or misunderstood the evidence. *Cooper v. Rosser,* 232 Ga. 597 (207 SE2d 513); *Hight v. Butler,* 230 Ga. 533 (198 SE2d 169); *Alexander v. Kendrick,* 134 Ga. App. 249 (213 SE2d 911). There being evidence to support the trial court's determination that Kubatzky's design modifications constituted an entering

upon the contractual obligation at the direction of Cahoon and Copeland and that his services were accepted by them, we will not disturb such findings. *Powers v. Brunswick-Balke-Collender Co.,* 19 Ga. App. 706, 707 (3) (91 SE 1062).

Based upon the foregoing, it was not error for the trial court to refuse to dismiss Kubatzky's complaint at the conclusion of his evidence.

2. In their second enumeration of error, Cahoon and Copeland complain that the trial court's findings of fact were contradictory and inconsistent. This contention is based upon an equivocal portion of those findings which states that ". . . if employment were consummated . . ." Kubatzky could recover his wages, whereas further in those findings the trial court affirmatively concluded there was a contract of employment upon which Kubatzky commenced work by modifying the architectural design.

For the reasons stated in Division 1 of this opinion, the trial court did not err in concluding that the work upon the architectural design constituted work under the terms of the contract. Moreover, the court did not err in concluding the existence of a contract. The introductory paragraph of the letter of intent did not condition the offer of employment upon the obtaining of the construction financing. Rather it appears that during their earlier discussions the lack of financing had been discussed. For instance, Kubatzky testified he would not have accepted employment in the absence of a construction loan. The letter of November 19, stated a fait accompli, i.e., that final approval of Princess Square Homes and closing would occur during the week of November 19, therefore Cahoon and Copeland made the offer of employment.

Where the person sought to be charged has signed an offer, an acceptance by the opposite party renders the agreement operative. An acceptance of the agreement as thus signed moreover will be inferred from the receipt by the opposite party of the benefits flowing to him under the contract as written. *Robinson v. Belcher,* 37 Ga. App. 412 (1) (140 SE 412).

When read as a whole, the trial court's finding of fact was not inconsistent or contradictory. It accurately reflects the factual situation and states the offer,

acceptance and performance under the contract.

3. In their third enumeration, Cahoon and Copeland assert that the trial court's conclusion of law was not supported by fact or law. Reference here is made to the lack of work performance under the terms of the contract and that the only work was of an architectural nature. These contentions have been treated fully in the foregoing portions of this opinion. This enumeration is without merit.

4. In his cross appeal, Kubatzky complains that the trial court erred in limiting the amount of damages to four weeks work at $300 per week, or a total of $1,200. He asserts that he is entitled to further damages for the loss of profit sharing (5% of the profits of construction), use of auto, reasonable rental, and bonus.

These assertions of damage are, at best, speculative. No construction was commenced, thus the trial court had no indicia in determining profit sharing whether there would have been any profits or even a loss in the construction. The bonus was based upon meeting a construction schedule, but the court could not know whether the units would be completed on time or delayed. Kubatzky gave no evidence as to how often he used a car in his business or what expenses were attributable to such use. There was evidence that an empty apartment was available but no evidence that Kubatzky made any attempt to utilize it or made demand for possession.

The judgment of the court for $1,200 was within the range of damages established by the evidence. Thus, such damages were authorized and were not inadequate. *Hinson v. Dept. of Transportation,* 135 Ga. App. 258 (217 SE2d 606); *State Hwy. Dept. v. Jernigan,* 123 Ga. App. 393 (181 SE2d 287); *Lassiter v. State Hwy. Dept.,* 117 Ga. App. 128 (159 SE2d 302); *Swiney v. State Hwy. Dept.,* 116 Ga. App. 667 (158 SE2d 321).

*Judgments affirmed. Pannell, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED MARCH 1, 1976 — DECIDED APRIL 9, 1976 — REHEARING DENIED APRIL 21, 1976 IN CASES NOS. 51903 AND 51904.

*Weltner, Kidd, Crumbley & Tate, R. Alex Crumbley,* for Cahoon and Copeland.

*Kaler, Karesh & Frankel, Jerry L. Sims, Lawrence J. Movshin,* for Kubatkzy.