A95A1803. TONCEE, INC. v. THOMAS.
(466 SE2d 27)

BEASLEY, Chief Judge.

Toncee, Inc. appeals a jury verdict and judgment in favor of Thomas for breach of employment contract; it awarded lost wages, vacation pay, and attorney fees.

Thomas was employed by Mead Corporation when he took a position with Toncee. Thomas and Toncee executed a document dated May 19, 1989, addressed to Thomas from Toncee and prepared by Toncee's attorneys entitled "Outline of Terms of Employment Agreement and Stock Option," which set forth the terms of Thomas' employment by Toncee, including an annual salary of $30,000, a three-year term of employment, his responsibilities as supervisor batchmaker, the vacation policy, insurance coverage, and stock options. The document also provided, "If the terms of this letter of intent are acceptable to you, we will instruct our attorneys to prepare a formal employment agreement and stock option agreement which will include these terms and conditions and such other terms and condi-

tions which are typical in these types of arrangements." Finally, the document stated, "If the terms of this letter of intent are acceptable to you, please sign the acknowledgement below and return one copy of this letter to us."

During the entire period Thomas was employed by Toncee, he also continued to work full-time at Mead, although the parties dispute whether Thomas was required to resign from his position at Mead as a condition precedent to his being hired by Toncee. Toncee terminated Thomas in June 1991, almost a year prior to the expiration of the term in the document, and the parties dispute whether the termination was for cause. Thomas sued Toncee for breach of employment contract.

1. Toncee cites as error the trial court's denial of its motion for summary judgment. Because the record reveals no legal basis to conclude that the verdict was not supported by the evidence, any error arising from the denial of summary judgment is rendered harmless as well as moot. *Talmadge v. Talmadge*, 241 Ga. 609 (1) (247 SE2d 61) (1978); *First Financial Ins. Co. v. Mathis*, 214 Ga. App. 537, 538 (448 SE2d 87) (1994).

2. Toncee disputes the trial court's denial of its motion for directed verdict on the ground that Thomas did not present evidence of a written employment contract that would satisfy the statute of frauds. Directed verdict is authorized only "if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a).

The Statute of Frauds requires that an agreement not to be performed within a year of its making must be in writing and signed by the party to be charged with the obligation. OCGA § 13-5-30 (5). *American Standard v. Jessee*, 150 Ga. App. 663, 664 (1) (258 SE2d 240) (1979). " 'The writing or memorandum . . . must be complete in itself, with nothing left in parol. [Cit.] It must show all the terms of the contract, the parties, and their assent thereto, in addition to showing the fact that there was a contract between the parties. [Cits.]' [Cit.]" Id. "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon. [Cit.]" *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438 (1) (292 SE2d 84) (1982). The document in this instance meets these requirements and includes Thomas' annual salary, his responsibilities, the three-year term of employment, the company vacation policy, and the insurance offered.

Toncee argues that because reference is made within the body to it being a "letter of intent," the document itself evidences that the parties did not intend for it to constitute an employment agreement but merely a proposal to enter into an agreement. The document's

designation as a "letter of intent" is not dispositive. See, e.g., *Cahoon v. Kubatzky*, 138 Ga. App. 393 (226 SE2d 467) (1976). Neither is the language in the outline stating, "If the terms of this letter of intent are acceptable to you, [Toncee] will instruct [its] attorneys to prepare a formal employment agreement and stock option agreement which will include these terms and conditions and other such terms and conditions as are typical in these types of arrangements." The jury was authorized to weigh the evidence to determine that this language was superfluous, and that the language directing Thomas to sign and return a copy if acceptable was further evidence that the parties intended this to be their agreement. See OCGA § 13-2-1.

In addition, the actions of the parties demonstrated they intended to be bound by the terms of the outline. From May 1989 through June 1991, for over two years, Toncee employed Thomas in accordance with its terms and conditions. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962).

Toncee contends that essential portions of the contract remained to be negotiated, specifically, the stock option provision, and thus the requirements of the Statute of Frauds were not met. It cites *Demer v. Capital City Cable*, 190 Ga. App. 40 (378 SE2d 162) (1989), but the court in that case found specifically that the equity participation plan at issue, worth over one million dollars to the plaintiff, was an important inducement to his accepting employment, that the terms in the letter of intent were ambiguous, and that further discussion was necessary to resolve open issues. Id. at 42-43.

Conversely, the stock option provision in this instance was not an essential term, as evidenced by the parties' conduct in performing every other term. Thomas makes no claim based on it. Moreover, by its express terms, the outline provided that the stock option agreement was to be separately drafted, making it severable from the terms of the employment contract itself. OCGA § 13-1-8. *Cahoon*, supra at 396. "[I]n cases involving the issue of severability, ' " "(w)here an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more and when taken independently of certain subsidiary provisions in the instrument would render the instrument valid as a contract, such subsidiary provisions will not, unless their terms imperatively demand it, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void.' [Cits.]" ' " *National Consultants v. Burt*, 186 Ga. App. 27, 34 (3) (366 SE2d 344) (1988). The stock option provision was subsidiary and did not nullify the obligations of Toncee under the agreement.

Toncee also argues that the sparsity of the non-competition provision and the references to "other standard terms and conditions" to be included in the "formal agreement" further evidenced the parties' understanding that the outline was intended merely to be a contract proposal. The non-compete provision stated, "For a period of two years after your employment, you will not solicit the business of any existing clients of the company. This will not prohibit you from working in a competitive business; you simply will be prohibited from 'taking' any of Toncee's existing clients." The trial court ruled, properly, that the non-compete provisions were sufficiently clear and unambiguous to "satisf[y] the minimum requirements" as a matter of law. *Race, Inc. v. Wade Leasing*, 201 Ga. App. 340, 341 (1) (411 SE2d 56) (1991). Furthermore, it is plain from the context that the "other terms" provision refers to nonessential boilerplate that would rarely be discussed, much less negotiated, between the parties to such an employment agreement.

It is unnecessary that a contract state " 'definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.' [Cit.]" *Jack V. Heard Contractors v. A. L. Adams Constr. Co.*, 155 Ga. App. 409, 412-413 (271 SE2d 222) (1980). A jury could find that all essential terms and conditions that the parties intended to constitute their employment agreement were present in this outline, precluding a directed verdict.

3. Toncee challenges the trial court's denial of its motion for directed verdict on the issue of attorney fees and its charge to the jury that attorney fees could be awarded, on the ground that there was a bona fide controversy which prevented Thomas from being entitled to such.

OCGA § 13-6-11 provides, "The expenses of litigation generally shall not be allowed as a part of the damages [for breach of contract]; but . . . where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." This " 'is a question for the jury and an award will be upheld if any evidence is presented to support the award. (Cit.)' [Cit.]" *Professional Consulting Svcs. of Ga. v. Ibrahim*, 206 Ga. App. 663, 665 (3) (426 SE2d 376) (1992). A recovery for stubborn litigiousness or for causing the plaintiff unnecessary trouble and expense "is authorized where the evidence reveals no bona fide controversy or dispute with regard to the defendant's liability. [Cits.] Whether or not a bona fide controversy exists is normally for the jury to decide. [Cits.]" *Matthews v. Neal, Greene & Clark*, 177 Ga. App. 26, 29 (4) (338 SE2d 496) (1985).

There was ample evidence to support the award. Thomas was hired and compensated for over two years of satisfactory service in accordance with the terms of the agreement, which Toncee insists does not exist. In April 1991, Toncee reduced Thomas' pay in violation of the agreement. It also withheld over a thousand dollars of vested vacation pay, despite admitting that this amount was due and owing to Thomas. Toncee relies on *Stone v. King*, 196 Ga. App. 251 (396 SE2d 45) (1990), for the proposition that a plaintiff is required to comply with the provisions of OCGA § 9-15-14 to receive attorney fees once suit is filed, and since Thomas did not comply with its procedural requirements, he would only be entitled to attorney fees for conduct up and until suit was filed. This misconstrues *Stone*, which held that attorney fees could be awarded pursuant to OCGA § 9-15-14, and not OCGA § 13-6-11, for enforcement of a settlement agreement entered into *after* suit was instituted. Id. at 252-253. *Stone* made plain that OCGA § 9-15-14 covers conduct occurring *during* litigation, whereas OCGA § 13-6-11 applies to conduct " 'aris(ing) from the transaction *underlying* the cause of action [which is] in litigation.' " (Emphasis supplied.) Id. at 253. Thomas sought and proved the latter.

4. The court charged the jury, "Where in a contract the parties agree to early termination of the contract by either party for good cause and the contract does not define good cause, the party terminating the contract shall be judge of what constitutes good cause." Toncee argues this charge means it was entitled to terminate the contract anytime it determined it had good cause to do so, so that the verdict awarding lost wages was contrary to the law and evidence.

As with any contract, this contract imposed upon each party a duty of good faith and fair dealing in the performance and completion of their respective duties and obligations. *Building Materials Wholesale v. Reeves*, 209 Ga. App. 361, 363 (433 SE2d 346) (1993). See also OCGA § 13-4-20. It was thus Toncee's duty to employ good faith to determine what constituted "good cause" for termination. Ample testimony allowed the jury to determine that Thomas did not defectively or deficiently perform his employment duties or obligations, so as to be entitled to lost wages for the remaining period of the term. As to contrary evidence, it is the duty of the jury to determine the credibility of witnesses and resolve conflicting testimony. *Davis v. State*, 203 Ga. App. 227, 228 (416 SE2d 771) (1992).

5. The trial court instructed the jury, "It is not necessary that a contract state definitely and specifically all the facts and details to which the parties make an agreement, but as to such matters it will be sufficient and definite and certain if it contains matters which will enable you, the jury, under proper rules of contract construction to ascertain the terms and conditions on which the parties intended to

bind themselves."

Toncee's assertion that the court erred in so charging is without merit. While it is true under OCGA § 13-2-1 that construction of the terms of a contract is a question of law for the court, the issue in this case did not involve construction of a particular contract term. The parties' primary disagreement was whether a written employment agreement between them existed at all. The conflicting evidence presented an issue of fact for jury determination, and the court properly instructed the jury regarding applicable rules of contract construction. See OCGA § 13-2-1. *Jem Patents v. Frost*, 156 Ga. App. 311, 312 (274 SE2d 707) (1980).

6. The court charged the jury, "A waiver of a condition precedent can be implied by the conduct of the parties, and a pattern or course of conduct may evidence a waiver of any such contract requirement." Toncee's contention, that this charge was error in that this case presented no issue relating to the waiver of any contract condition, ignores the evidence. A fundamental dispute between the parties was whether Thomas was required to resign from Mead as a condition precedent to Thomas entering into employment with Toncee. The existence and waiver of such a condition were jury questions, and the court properly instructed the jury in this regard. See, e.g., *Royal Atlanta Dev. Corp. v. M. D. Hodges Enterprises*, 141 Ga. App. 838, 839 (1) (234 SE2d 676) (1977).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 19, 1995 —

*Goldner, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., William W. Horlock, Jr.*, for appellant.
*Adam R. Gaslowitz, Jeffrey L. O. Evans*, for appellee.