A98A0928. PACRIM ASSOCIATES et al. v. TURNER HOME ENTERTAINMENT, INC.
(510 SE2d 52)

RUFFIN, Judge.

Pacrim Associates and one of its shareholders and employees, Pamela Kent, sued Turner Home Entertainment ("Turner") under various contract theories and for fraud. In its complaint, Pacrim alleges that it entered into an agreement with Turner under which Pacrim was appointed as Turner's exclusive licensing and merchandising agent in Thailand for a one-year period. Plaintiffs allege that Turner's premature termination of the contract gave rise to causes of action for breach of contract, promissory estoppel, and fraud, inter alia. The trial court granted summary judgment in favor of Turner on all issues. Plaintiffs appeal, asserting that the trial court erred (1) in ruling as a matter of law that the parties did not form a binding contract; (2) in granting summary judgment on their promissory

estoppel claim; and (3) in granting summary judgment on their fraud claim. For reasons which follow, we find that the trial court correctly granted summary judgment to Turner on plaintiffs' fraud claim, but erred in granting summary judgment to Turner on their contract and promissory estoppel claims.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review is de novo. *Walker v. Virtual Packaging, LLC*, 229 Ga. App. 124 (493 SE2d 551) (1997).

Viewed in a light most favorable to plaintiffs, the nonmovants, the record reveals that Pacrim is a limited liability company registered in Thailand. Beginning in 1992, Pacrim acted as an agent for Turner Publishing, a Turner subsidiary. The agency relationship was established following discussions between Pacrim and Turner Publishing and was finalized in a letter of agreement between the parties. As an agent, Pacrim was to seek opportunities in certain Asian countries to sell and publish Turner Publishing titles.

During its agency with Turner Publishing, Pacrim expressed interest in licensing other Turner properties in Asia. Accordingly, in early 1994, James Porges, Turner Publishing's Manager of International Sales, introduced Kent to Turner employees involved in merchandising and licensing other Turner products. Two such individuals were Turner's President, Phil Kent[1] (no relation to Pamela Kent), and Turner's Vice-President of International Licensing, Helen Isaacson. During meetings with Phil Kent and Isaacson, Pamela Kent proposed that Pacrim serve as the licensing and merchandising agent

---

[1] All references to "Kent" in this opinion refer to Pamela Kent, and Phil Kent is always referred to by his full name.

for Turner's Hanna-Barbera cartoon characters in Thailand. On May 22, 1994, Porges sent a letter to Pacrim in which he stated that "I spoke to Helen [Isaacson] and Phil Kent early last week regarding merchandising in Asia and they have agreed to let Pacrim represent Turner licensing and merchandising on an exclusive basis in Thailand for a one year trial period. You will have to work out approval systems, commissions, and operating procedures with Helen." Phil Kent also spoke with Pamela Kent and informed her that Turner was "willing to try this for a year, [but Pacrim has] to work out the details with Helen [Isaacson]." According to Pamela Kent, Phil Kent "agreed that Pacrim would be retained on the standard Turner agency terms for merchandising and licensing, which included a thirty percent (30%) commission to Pacrim upon any royalties payable to Turner as a result of merchandising and licensing agreements."

As instructed by Porges and Phil Kent, Pamela Kent contacted Isaacson to arrange the details of Pacrim's agency agreement with Turner. According to Kent, during a July 4, 1994 telephone conversation, Isaacson "confirmed that Pacrim had indeed been retained by [Turner] as merchandising and licensing agent in Thailand for a one-year period on an exclusive basis through July 1, 1995." Isaacson further informed Kent that she would send Pacrim all the required materials shortly. On July 13, 1994, Isaacson sent Kent a memo detailing Turner's licensing guidelines, royalty rates, licensing and merchandising approval process and its policies concerning copyrights and trademarks and stating, "We look forward to working with you."

Although Turner failed to respond to Kent's subsequent requests for further information and guidance, and the parties never executed a written agreement, on August 23, 1994, Turner sent a memo to its current Hanna-Barbera licensees, declaring, "We are pleased to announce that Pacrim Associates is Turner's newly appointed agent in Thailand for Hanna-Barbera Properties. They will be contacting you shortly to update you on the Hanna-Barbera licensing program for the region and to provide you with information regarding new compliance procedures. Of course, feel free to contact Pamela Kent . . . at any time. We are pleased to be working with Pacrim and are confident that the Thailand Hanna-Barbera business will enjoy an unprecedented level of support." Based on this memo, the prior written correspondence between the parties, and their verbal agreement for a one-year agency, Pacrim entered into extensive negotiations with several Thai companies to obtain licensing and merchandising agreements on behalf of Turner.

The record further shows that on September 21, 1996, Isaacson directed Turner employees to prepare an agent's representative agreement for Pacrim. Specifically, Isaacson advised these employees

that "PacRim [sic] will be our agent for all Hanna Barbera Properties." However, Turner never presented the written agreement to Pacrim for execution. According to Isaacson, she did not ask Pacrim to execute a contract because she "had [certain] concerns." In a January 16, 1995 letter to Pacrim, Turner notified the company that it was terminating the parties' relationship. In the letter, Turner stated that because the parties' "discussions have failed to result in any agreement between the parties as to the material terms of the relationship[,] . . . we have decided to terminate the at-will relationship between [Pacrim] and [Turner's] merchandising division." The lawsuit which is the subject of this appeal followed.

1. The trial court granted Turner summary judgment on plaintiffs' breach of contract claim on the ground that the parties' agreement was "too vague and indefinite to constitute an enforceable contract." Plaintiffs assert that there was sufficient specificity, and we agree.

"The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." (Citations and punctuation omitted.) *McLean v. Continental Wingate Co.*, 212 Ga. App. 356, 358 (1) (442 SE2d 276) (1994). Moreover, "[i]t is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." (Citations and punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (2) (466 SE2d 27) (1995). We must look to the actions of the parties to determine whether they intended to be bound by the terms of their agreement. Id. at 541.

The verbal agreement in this case was sufficient to establish a binding agreement between Turner and Pacrim. Specifically, the parties verbally agreed that Pacrim would be Turner's exclusive agent for licensing and merchandising of Hanna-Barbera properties in Thailand for a one-year period ending July 1, 1995, and that the agreement would be subject to Turner's standard agency terms for merchandising and licensing, which included a thirty percent commission to Pacrim upon any royalties. We are bound to view the evidence before us in a light most favorable to plaintiffs, the nonmoving parties, *Lau's Corp.*, supra, and in so doing, we find that the evidence demonstrates that plaintiffs never rejected these terms and that the parties did not leave any material terms to future negotiations. Instead, as instructed by Porges and Phil Kent, Pamela Kent contacted Isaacson to clarify the remaining details of Pacrim's agency agreement with Turner, and shortly thereafter, Isaacson notified

Pacrim of Turner's standard licensing guidelines, royalty rates, licensing and merchandising approval process and copyrights and trademark policies. The evidence further reflects that although Pacrim sought additional information and clarification of the terms of the agreement, it was not negotiating or contesting them. See *Holland v. Holland Heating*, 208 Ga. App. 794, 795 (1) (432 SE2d 238) (1993).

Contrary to the trial court's conclusion that the "[s]ubject matter was not clearly addressed and the scope of the work was not clearly defined," there is evidence that the parties intended that Pacrim would be the exclusive licensing agent for Turner's Hanna-Barbera line for a one-year trial period, pursuant to Turner's standard licensing guidelines. In *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 440 (2) (292 SE2d 84) (1982), we held that "a contract is not void because its performance is, as to particular details, left subject to the subsequent agreement of the parties." See also *Holland*, supra at 795 (1). In *Touche Ross*, the contract's broad language as to the scope of work to be accomplished by the defendant was not found too indefinite or vague, because the parties "entered into performance of the contract without raising any question as to its legal significance, and continued for a period of approximately five months." Id. In this case, Pacrim alleges that it abided by the verbal agreement during the six-month period between the July 4, 1994 phone conversation with Isaacson and the January 16, 1995 letter terminating its services. On its part, Turner advised Pacrim via the phone call with Isaacson on July 4, 1994, that it was to begin work as a licensing agent and touted Pacrim as its Thai licensing agent to its other Hanna-Barbera licensees.

We also disagree with the trial court's decision that "[w]hat Pacrim had was an agreement from [Turner] to agree in the future." Rather, Turner's intent to be bound by the one-year exclusive agency agreement was evidenced by Turner's memo to its existing Hanna-Barbera licensees, advising them that Pacrim was Turner's newly appointed agent in Thailand for Hanna-Barbera properties. Moreover, despite the evidence that the parties anticipated that a written agreement would be executed in the future, there is no evidence that either party contemplated that the oral agreement would become effective *only* if it was reduced to writing and signed by the parties. Instead, the oral agreement contemplated that the agency relationship would extend for a one-year trial basis only and that it was subject to Turner's standard agency terms for merchandising and licensing. Under these circumstances, a jury would be authorized to find "that a binding . . . agreement was in effect, and the failure to sign [a] written instrument did not affect the validity of the oral agreement." (Citation and punctuation omitted.) *Gen. Hosp. of Humana v.*

*Jenkins*, 188 Ga. App. 825, 827 (1) (374 SE2d 739) (1988). In *Jenkins*, "it was undisputed . . . that [the parties] agreed upon a renewal lease . . . and that [they] both considered the matter to be resolved. . . . There was no evidence that either party contemplated that the oral agreement would become effective *only* if it was reduced to writing and signed . . ., although they both *expected* the written lease would be executed." (Punctuation omitted; emphasis in original.) Id.

Finally, although the evidence reveals that Pacrim was unsure whether the agency contract included licensing of property *other than* Hanna-Barbera products, such uncertainty does not preclude a finding that the parties agreed that Pacrim was the licensing agent for Hanna-Barbera products. Thus, there is sufficient evidence from which a jury could find that there was indeed the formation of a proper verbal contract, and the trial court erred in concluding otherwise. See *Toncee, Inc.*, supra.

2. Plaintiffs also contend that the trial court erred in granting summary judgment to Turner on their promissory estoppel claim. Specifically, plaintiffs allege that Turner promised them, among other things, that Pacrim would be Turner's exclusive licensing and merchandising agent for a minimum of one year and that Turner knew, or should have known, that plaintiffs would rely on this promise, and that they did so rely to their detriment. Plaintiffs argue that this promise was not conditional, and that even if it was conditional upon future events, those events occurred. Plaintiffs further assert that their promissory estoppel claim is based on Isaacson's representations as well as Phil Kent's. We agree with plaintiffs that the trial court should have denied Turner's motion for summary judgment regarding their promissory estoppel cause of action.

"Under the doctrine of promissory estoppel a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. OCGA § 13-3-44 (a)." (Citation and punctuation omitted.) *W. R. Grace & Co.-Conn. v. Taco Tico Acquisition Corp.*, 216 Ga. App. 423, 426 (1) (454 SE2d 789) (1995). The trial court ruled that Turner was entitled to summary judgment because the promise of an exclusive agency to Pacrim was conditional upon arranging the details with Isaacson and there was no evidence this condition was ever fulfilled.

From our review of the record, and based upon our duty to view the facts in a light most favorable to plaintiffs, it appears the trial court ignored evidence that Kent contacted Isaacson, as Porges and Phil Kent requested, and in response, Isaacson notified her of Turner's standard licensing guidelines, royalty rates, licensing and mer-

chandising approval process and copyrights and trademarks policies. In light of such evidence, even if the promise of an exclusive, one-year agency agreement was conditional upon Pacrim's working out details with Isaacson, a material issue of fact exists concerning whether this condition was fulfilled. Similarly, considering Turner's subsequent action in notifying existing Hanna-Barbera licensees that Pacrim "is Turner's newly appointed agent in Thailand for Hanna-Barbera Properties" and would be providing the licensees with updated information regarding the Hanna-Barbera licensing program, and that the licensees should "feel free to contact Pamela Kent . . . at any time[,]" we conclude that a material issue of fact exists concerning whether Turner should have reasonably expected to induce action or forbearance on plaintiffs' part. Plaintiffs did in fact act; thus, the trial court erroneously granted summary judgment to Turner on plaintiffs' promissory estoppel claim.

3. Lastly, plaintiffs maintain that the trial court improperly granted Turner summary judgment on their fraud claim. In their complaint, plaintiffs allege that in an effort to deceive, Turner represented that Pacrim would be its exclusive licensing and merchandising agent in Thailand for one year when Turner knew that the representation was false. A review of the record reveals no evidence supporting plaintiffs' allegation.

It is well established under Georgia law that "fraud cannot generally be based on instances of misrepresentations as to future events." (Punctuation omitted.) *Rogers v. deMonteguin*, 193 Ga. App. 480, 481 (1) (388 SE2d 10) (1989). An exception to this general rule exists where the promisor knows, at the time of the misrepresentation, that the future event will not take place. Id. at 481-482. Thus, the issue before us is whether there is evidence that at the time the promise was made, Turner had no intention of retaining Pacrim as its exclusive licensing agent in Thailand for a one-year period. Id.

Plaintiffs do not deny that Turner's alleged fraud was as to a future event; however, they contend that because Turner knew at the time it made the promise that Pacrim would not have a one-year agency, a jury could find fraud. In support of their assertion, plaintiffs only point to evidence showing that *subsequent* to the parties' oral agreement, Turner employees, specifically Isaacson, did not intend to comply with the promise. While such evidence might support a claim for breach of contract, it does not show that Turner did not intend to comply with the agreement *at the time the promise was made*. See *Rogers*, supra; *Gunnin v. Dement*, 205 Ga. App. 631, 633 (2) (422 SE2d 893) (1992). Since there was no evidence that Turner had a present intent not to comply with the promise, the trial court did not err in granting Turner summary judgment on plaintiffs' fraud claim.

Accordingly, we find that the trial court properly granted Turner summary judgment on plaintiffs' fraud claim, but erroneously granted summary judgment against plaintiffs on their contract and promissory estoppel claims.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 30, 1998 —
RECONSIDERATION DENIED DECEMBER 15, 1998.

*Alembeck, Fine & Callner, Mark E. Bergeson, Zoe I. Martinez,* for appellants.

*Troutman Sanders, Kaye W. Burwell, John J. Dalton,* for appellee.

