A02A0167. QUADRON SOFTWARE INTERNATIONAL CORPORATION et al. v. PLOTSENEDER.
(568 SE2d 178)

RUFFIN, Judge.

Hans P. Plotseneder sued Quadron Software International Corporation ("Quadron") and Fischer International Systems Corporation ("Fischer International") alleging that they breached various employment-related agreements. The trial court granted Quadron and

Fischer International summary judgment on all but two of Plotseneder's claims. Quadron and Fischer International appeal the trial court's denial of summary judgment on Plotseneder's two remaining claims, and for reasons that follow, we affirm in part and reverse in part.

To prevail on their motion for summary judgment, Quadron and Fischer International must show

> that there is no evidence sufficient to create a jury issue on at least one essential element of [Plotseneder's] case. If there is no evidence sufficient to create a genuine issue as to any essential element of [Plotseneder's] claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.[1]

On appeal from a trial court's grant of summary judgment, we conduct a de novo review of the evidence and construe that evidence and all reasonable inferences in favor of the nonmoving party.[2]

Viewed in favor of Plotseneder, the evidence shows that he was the president and chief executive officer of a company called Blue Rainbow Software International ("Blue Rainbow"). In February 1993, Plotseneder met with Addison Fischer, the owner of Fischer International, to discuss a possible acquisition of Blue Rainbow by Addison. During the meeting, the parties also discussed the possibility of Plotseneder continuing to work for Blue Rainbow if the deal was consummated.

In the fall of 1993, Addison Fischer purchased Blue Rainbow and formed Quadron to hold the newly acquired assets and market the products. In February 1994, Fischer International hired Plotseneder to engage in business development and marketing. This appeal concerns two agreements entered between Quadron and Plotseneder while Plotseneder worked for either Quadron or Fischer International.[3]

The first agreement, executed in May 1994, was embodied in a memorandum prepared by Plotseneder and signed by Quadron's managing director, Julie Wright ("Sales Agreement"). The Sales Agreement provided in part:

> 1. You agree with the proposal I submitted to you and Mark Merenda in April (not dated, see attachment) with the

---

[1] (Citation and punctuation omitted.) *Hansen v. Cooper*, 253 Ga. App. 533, 535 (559 SE2d 740) (2002).

[2] See id. at 533.

[3] In his deposition, Plotseneder testified that he was initially employed by Fischer International. But his testimony also shows that, at some unspecified time, he began working for Quadron.

understanding that the projected expenses have not been approved yet. Independent of the actual numbers submitted, you agree with the approach to take the same percentage of the overall expenses of Quadron (here taken from Randall King's business plan) for determining the appropriate numbers for European Sales and other territories outside of North America. — Depending on changes of the projected expenses, the revenue projection will change. 2. I will receive a commission of 10% for all revenues from direct sales (license and maintenance fees) and 5% as an override for sales closed by a third party (for example distributor, agent or other employee). This includes single licenses as well as volume sales. . . . My current base compensation plan as offered and approved by Randall King will remain unchanged. — Should Fischer [International] and Quadron agree to sell each other's products, revenues for Fischer [International] products will be compensated under the same 10% and 5% scheme. 3. My sales territory encompasses all countries except the USA, Canada, and Mexico. . . . 5. Initially, this agreement shall commence on June 1, 1994, for an initial period of 19 months. After the first 19 months it should continue unless and until terminated by either party giving to the other not less than 1 months' [sic] written notice.

The second agreement was executed by Wright and Plotseneder on October 3, 1994 ("Development Agreement"). The Development Agreement obligated Plotseneder to fix flaws in two software products owned by Quadron and Fischer International. Under the Development Agreement, the two companies were to provide funding for Plotseneder's remedial work, and when the products were fully developed, Plotseneder had the exclusive right to market them under Quadron's name and from its offices. Quadron and Fischer International were required to pay Plotseneder 50 percent of the net revenues from the sales proceeds. The Development Agreement provided for an initial term of three years, "regardless of the employment situation between [Plotseneder and Quadron]," and was automatically renewed unless cancelled by either party.

It appears that the parties' relationship rapidly deteriorated, and on November 28, 1994, Quadron terminated Plotseneder's employment. Plotseneder subsequently filed the instant complaint against Quadron and Fischer International. Among other claims, Plotseneder contended that Quadron owed him $6,030 for breaching the Sales Agreement. Plotseneder also sought specific performance of

the Development Agreement, and in his deposition, he testified that, in the alternative, he wanted $500,000.

Quadron and Fischer International moved for summary judgment on all of Plotseneder's claims. The trial court granted the motions on all the claims except those arising out of the Sales Agreement and the Development Agreement. In its order, the trial court also noted that, "[a]lthough Plaintiff initially sought damages in the alternative on [his claim under the Development Agreement], he . . . informed the court at oral argument that he will only seek specific performance on said agreement." This appeal ensued.[4]

1. Appellants point to several alleged ambiguities in the Sales Agreement and argue that it was too indefinite to be enforceable. Thus, they assert, they are entitled to summary judgment on Plotseneder's claim for commissions due under the Sales Agreement. We disagree.

To be enforceable, a contract's language must be

> sufficiently plain and explicit to convey what the parties agreed upon. . . . [I]t is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. We must look to the actions of the parties to determine whether they intended to be bound by the terms of their agreement.[5]

The law does not favor "the destruction of contracts on the ground of uncertainty if it is possible in the light of the circumstances under which the contract was made to determine the reasonable intention of the parties."[6]

The Sales Agreement in this case was sufficiently definite to be enforceable. Under its terms, Quadron agreed to pay Plotseneder a ten percent commission if he sold one of its products directly and five percent if the sale was closed by a third party. The agreement provided for an identical commission structure if Plotseneder sold

---

[4] Plotseneder also appealed the trial court's partial grant of summary judgment to Quadron and Fischer International, but his appeal was dismissed because he failed to file a brief and enumerations of error. See *Plotseneder v. Quadron Software Intl. Corp.*, Case No. A02A0166 (order entered November 19, 2001).

[5] (Citations and punctuation omitted.) *Pacrim Assoc. v. Turner Home Entertainment*, 235 Ga. App. 761, 764 (1) (510 SE2d 52) (1998).

[6] (Punctuation omitted.) *Gram Corp. v. Wilkinson*, 210 Ga. App. 680, 681 (1) (437 SE2d 341) (1993).

Fischer International products, but only if Quadron and Fischer International first agreed to sell each other's products. Finally, the Sales Agreement contained a commencement date, provided for an initial term of 19 months, and was limited to sales outside of North America. Thus, the agreement stated the nature of the services to be provided, the place those services were to be provided, the compensation to be paid for those services, and the term of the agreement. There is no evidence that appellants ever rejected, or even questioned, these provisions. To the contrary, the evidence shows that Quadron paid Plotseneder commissions under the Sales Agreement.[7] Thus, viewing the evidence in a light most favorable to Plotseneder, we conclude that the Sales Agreement sufficiently conveyed what the parties agreed upon.[8]

Appellants nevertheless argue that it is unenforceable because the first numbered paragraph references a "proposal" concerning expenses, and Plotseneder has not produced or adequately explained the proposal. Plotseneder testified in his deposition, however, that the provision concerning expenses was not an important part of the agreement, and appellants have not pointed to any evidence showing it was an essential term. Moreover, as stated above, Quadron had paid Plotseneder commissions under the Sales Agreement, thus indicating that the parties did not consider the proposal essential in determining when Quadron was obligated to pay commissions or the amount of the commissions. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them."[9] Accordingly, this argument is without merit.

Appellants also argue that the Sales Agreement was unenforceable because it did "not identify the products the sale of which would generate the specified commissions." Neither, however, did the Sales Agreement restrict the scope of such products. While appellants apparently urge that the agreement was limited to sales of only certain Quadron products, they have cited no evidence supporting such restriction, and the contract language does not indicate that the parties intended to limit its scope in this manner. Accordingly, we do not

---

[7] See *Pacrim Assoc.*, supra at 765 (observing that, in *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 440 (2) (292 SE2d 84) (1982), the Court held that "the contract's broad language as to the scope of work to be accomplished by the defendant was not found too indefinite or vague, because the parties 'entered into performance of the contract without raising any question as to its legal significance, and continued for a period of approximately five months'"); *Wilkinson*, supra at 681-682 (holding that "[w]here, as here, the parties abided by the terms of the contract without dispute for approximately two years, it was not error to find it to be enforceable").

[8] See *Pacrim Assoc.*, supra; *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 540 (2) (466 SE2d 27) (1995).

[9] (Punctuation omitted.) Id. at 541.

find that the Sales Agreement was unenforceable because it lacked such an essential term.

Finally, we also disagree with appellants' argument that the Sales Agreement was unenforceable because the parties left certain terms to be negotiated in the future. In support of this assertion, appellants point to a crossed-out provision in paragraph two of the agreement, which states that the commissions also apply to certain sales of products by Fischer International. The omitted provision is accompanied by a handwritten annotation reading "to be determined," and appellants contend that this reflects that the term was left to future negotiations. But this uncertainty does not preclude a finding that the parties agreed that Quadron would pay Plotseneder commissions for the other sales addressed in paragraph two of the agreement.[10] And, although appellants further assert that the proposal referenced in paragraph one also reflects that terms were left to future negotiations, as discussed above, evidence shows that the expense proposal was not a material term of the agreement. Accordingly, there is sufficient evidence from which a jury could find that the parties entered an enforceable contract, and the trial court did not err in partially denying appellants' motion for summary judgment on this basis.[11]

2. Appellants next assert that the trial court erred in denying summary judgment on Plotseneder's claim for breach of the Sales Agreement because he failed to produce any evidence that they breached the alleged agreement or that he suffered damages. We disagree.

During Plotseneder's deposition, appellants questioned him about the commissions he was claiming under the Sales Agreement. Plotseneder testified that he was seeking $6,030 for "European sales" activity. Later in his deposition, appellants questioned Plotseneder about a letter he sent to Quadron's president concerning commissions for European sales. The letter reflects three "European Sales" totaling $60,300 and Plotseneder's claim for a ten percent commission of $6,030. Plotseneder testified that this letter represents the commissions he is claiming under the Sales Agreement. From this evidence, a jury could reasonably find that Plotseneder completed these European sales and is owed $6,030 in commissions under the Sales Agreement. Thus, summary judgment was properly denied on this claim.

3. The trial court erred, however, in failing to grant appellants summary judgment on Plotseneder's claim for specific performance of the Development Agreement.

---

[10] See *Pacrim Assoc.*, supra at 766.
[11] See id.; *Toncee*, supra at 542; *Wilkinson*, supra.

Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance. OCGA § 23-2-130. Accordingly, when there is a mere breach of a personal contract, for which the defendant is liable in damages, and it is not shown that irreparable injury will result, unless the contract be specifically performed, a Court of Equity will not decree such specific performance.[12]

In this case, appellants assert that Plotseneder has not shown that he would be irreparably injured unless the Development Agreement is enforced. Moreover, they point out, Plotseneder testified in his deposition that money damages would adequately compensate him for the alleged breach. In the cited testimony, Plotseneder stated that he had calculated the damages he would suffer if appellants fail to perform under the Development Agreement: "I have made certain assumptions based on business case numbers, projections from market research institutes, and it's approximately $500,000."

In response, Plotseneder does not argue that such damages would be inadequate. Neither does he point to evidence showing that he would be irreparably injured if the agreement is not enforced. Indeed, Plotseneder failed to address the irreparable harm requirement when the issue was raised below, and in his appellate brief, he merely argues that summary judgment was properly denied because the agreement is enforceable. That is hardly sufficient to withstand appellants' motion for summary judgment.

Where, as here, a defendant has moved for summary judgment and demonstrated that there is "an absence of evidence to support the plaintiff's case[,] . . . the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue."[13] Considering Plotseneder's total failure to address the issue, and in light of his deposition testimony, we cannot say that he

has taken [himself] out of the general rule that when there is a mere breach of a personal contract, for which the defendant is liable in damages, and it is not shown that irreparable injury will result, unless the contract be specifi-

---

[12] (Punctuation omitted.) *Eickhoff v. Eickhoff*, 263 Ga. 498, 500-501 (2) (435 SE2d 914) (1993), overruled on other grounds, *Lee v. Green Land Co.*, 272 Ga. 107, 108 (527 SE2d 204) (2000).

[13] *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (2) (553 SE2d 868) (2001).

cally performed, a Court of Equity will not decree such specific performance.[14]

Accordingly, the trial court erred in denying appellants summary judgment on this claim.[15]

*Judgment affirmed in part and reversed in part. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 2, 2002.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Joseph C. Sharp, Nicole L. Day*, for appellants.
*Sabiston & Smith, Eric P. Sabiston*, for appellee.

---

[14] (Punctuation omitted.) *Eickhoff*, supra at 502.
[15] See id.