[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15657
Non-Argument Calendar

_____

D. C. Docket No. 07-00173-CV-RLV-1

CLOUGH MARKETING SERVICES, INC.,

Plaintiff-Appellant,

versus

THE MAIN LINE CORPORATION,
NOE SANTAMARINA,
CAROLEE SANTAMARINA,

Defendants-Appellees,

P.A. BERGER SINGERMAN,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 6, 2008)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Clough Marketing Services appeals the denial of its motion to reopen the case and enforce a written settlement agreement. The district court concluded that the parties had satisfied the material terms of an agreement to settle their controversy. We affirm.

## I. BACKGROUND

Clough filed a complaint for tortious conduct against Main Line; its corporate officers, Noe and Carolee Santamarina; and the law firm Berger Singerman, which had served as counsel for Main Line. The district court dismissed Berger Singerman from the litigation. At the request of the remaining parties, the district court referred the case to a magistrate judge for mediation.

Following mediation, the parties appeared before the magistrate judge and announced the terms of a settlement on the record. Main Line and the Santamarinas agreed to pay Clough $750,000 by (1) allowing Clough to collect $225,359.29 from their creditors; (2) transferring title for a parcel of real estate located in St. Lucie County, Florida, and valued at $200,000 to Clough within 30 days of the hearing; (3) paying Clough $150,000 on or before July 31, 2007; and (4) paying Clough $175,000 on or before November 1, 2007. The parties further

agreed that the Santamarinas could obtain two appraisals performed by local and certified appraisers for the parcel in St. Lucie County and, if the average of the appraisals exceeded $200,000, the excess would be credited against the final payment of $175,000. In the event that Main Line and the Santamarinas failed to comply with the payment schedule, they agreed to a consent judgment of $1 million minus any previous payments. The parties also agreed to execute a written settlement agreement, "enter into mutual releases or covenants not to sue," dismiss "all claims and defenses with prejudice," and pay their own costs. At the conclusion of the hearing, each individual in his official and individual capacity and the two attorneys affirmed that they had discussed "all the material terms of the settlement" and were "authorized" and had "voluntarily entered into" the settlement. The district court dismissed the case without prejudice and with the condition that the parties could file a motion to reopen the case within 60 days.

After the hearing, the parties exchanged by email a written draft of a settlement agreement that had been drafted by Clough. The draft stated the payment schedule and other terms discussed in the hearing. The draft provided that the Santamarinas could rely on the average of two appraisals from "Certified General Appraisers" to value the property and required the Santamarinas to provide the appraisers' names and a copy of the appraisals by certain dates. In

their emails, both parties referenced and relied on the terms of the oral agreement.

Main Line and the Santamarinas complied with the payment schedule. In one email communication, Clough questioned whether the appraisals, which valued the property at $470,000 and $390,000, "reflect[ed] 'fair market value,'" but Clough accepted title to the property. The defendants delivered a payment of $150,000 on July 31, 2007, with a letter that stated they had satisfied their obligations. Clough executed the written settlement agreement on August 20, 2007.

On the same day that it executed the written agreement, Clough moved to reopen the case. Clough argued that the written agreement superseded the oral agreement, and Clough alleged that the defendants had breached the written agreement in three ways: (1) they failed to obtain appraisals that were performed by "certified general appraisers"; (2) the appraisals did not provide fair market valuations and were delivered in bad faith; and (3) the property was not transferred at the average value of the two appraisals. Clough also alleged that the defendants anticipatorily breached the agreement when their termination letter stated that the final payment of $150,000 satisfied the settlement agreement. Clough requested that the district court enter judgment against the defendants for the balance of the $1 million consent judgment.

4

The defendants responded that the dispute was governed by the oral settlement agreement, not the written agreement, and the defendants alleged that they had complied with the oral settlement. The defendants also argued that the conditions in the written agreement relied on by Clough were immaterial.

The district court denied Clough's motion to reopen the case. The district court concluded that the oral agreement governed and the defendants did not breach the agreement.

## II. STANDARD OF REVIEW

We review the denial of a motion to reopen and enforce a settlement for abuse of discretion. Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1485 (11th Cir. 1994).

## III. DISCUSSION

The construction and enforcement of settlement agreements are governed by the contract law of the forum state. Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985). Georgia "generally enforce[s] settlement agreements[.]" Ruskin v. AAF-McQuay, Inc., 643 S.E.2d 333, 337 (Ga. App. 2007). The "settlement agreement must meet the same requirements of formation and enforceability as other contracts" and is formed when the parties reach a "meeting of the minds" about its terms. Id. at 336 (quoting Greenwald v. Kersh, 621 S.E.2d 465, 467 (Ga.

5

App. 2005)). "[T]he law also favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced . . . unless it appears that the parties clearly failed to reach agreement on an essential contract term." Id. at 336–37; see Ga. Code Ann. § 13-3-2.

Clough's argument that the oral settlement agreement constituted an "agreement to agree" because the parties had to negotiate definite amounts to be paid, draft releases, and execute a written settlement fails. The parties orally entered a binding agreement. See Ruskin, 643 S.E.2d at 337 ("It is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing[.] . . . [I]t will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." (quoting Quadron Software Intern. Corp. v. Plotseneder, 568 S.E.2d 178, 181 (Ga. App. 2002)). The magistrate judge announced the payment terms agreed by the parties, after which the parties discussed mutual releases, the responsibilities for drafting the agreement, and the confidentiality of the settlement. Clough, its owner, Walter Clough, and its attorney, Todd Merolla, as well as Main Line, its corporate officers, the Santamarinas, and its attorney, Jay Nohr, individually verified that they were authorized to enter the settlement and

6

that they had "discussed [on the record] all the material terms of the settlement." The later drafting of the written settlement agreement "may have been a condition of the performance but it was not an act necessary" for the parties to reach an agreement to settle. Pourreza v. Teel Appraisals & Advisory, Inc., 616 S.E.2d 109, 111 (Ga. App. 2005).

Clough's conduct also established that it had reached an agreement. Clough accepted full payment from the defendants and then waited more than two weeks later to execute the written agreement. See Am. Computer Tech., Inc. v. Hardwick, 616 S.E.2d 838, 842 (Ga. App. 2005) ("Where a corporation knowing all of the facts accepts and uses the proceeds of an unauthorized contract executed in its behalf without authority, the corporation may be bound because of ratification." (quoting Holliday Constr. Co. v. Sandy Springs Assoc., 400 S.E.2d 380, 382 (Ga. App. 1990)). Clough cannot rely upon the written agreement to alter the parties' obligations after those obligations have been performed and accepted.

The district court did not abuse its discretion when it rejected Clough's three criticisms of the appraisals. First, Clough argues that the defendants were required to provide two certified "general" appraisals, but Clough agreed to appraisals of the Florida property by "certified" appraisers "in the area." Second, Clough argues that inconsistent statements in the appraisals prove that they did not reflect fair

7

market value, were "defective," and were tendered in bad faith, but those arguments are not supported by the record. Although the appraisal prepared by Carrie Benjamin stated that its "intended use was to assist . . . with a sales price negotiation," her supervising appraiser verified that the appraisal reflected the fair market value of the property. The report prepared by Dan McLaughlin misstated that he compared the property to three recent sales, but it did not render his appraisal misleading under professional practice standards because the report established that the valuation was based on two comparable sales and two current listings. Third, Clough complains about the valuation of the Florida property, but it agreed that the property could be valued at the average amount of the two appraisals. The appraisals averaged $430,000, and the defendants, in compliance with the agreement, reduced their final payment by the amount the average value exceeded $200,000. The defendants complied with the terms for transfer of the property. The district court did not abuse its discretion by denying the motion to reopen.

## IV. CONCLUSION

The denial of Clough's motion to reopen the case is **AFFIRMED**.